Simeon Souther was indicted at the October term for 1850, of the Circuit court for the county of Hanover, for the murder of his own slave. The indictment contained fifteen counts, in which the various modes of punishment and torture by which the homicide was charged to have been committed, were stated singly and in various combinations. The fifteenth count unites them all; and as the Court certifies that the indictment was sustained by the evidence, the giving the facts stated in that count will shew what was *Page 674 
the charge against the prisoner, and what was the proof to sustain it.
The count charged that on the first day of September 1849, the prisoner tied his negro slave Sam, with ropes about his wrists, neck, body, legs, and ankles, to a tree. That whilst so tied, the prisoner first whipped the slave with switches. That he next beat and cobbed the slave with a shingle, and compelled two of his slaves, a man and a woman, also to cob the deceased with the shingle. That whilst the deceased was so tied to the tree, the prisoner did strike, knock, kick, stamp, and beat him, upon various parts of his head, face and body; that he applied fire to his body, back, sides, belly, groins, and privy parts; that he then washed his body, c., with warm water, in which pods of red pepper had been put and steeped, and he compelled his two slaves aforesaid, also to wash him with this same preparation of warm water and red pepper. That after the tieing, whipping, cobbing, striking, beating, knocking, kicking, stamping, wounding, bruising, lacerating, burning, washing, and torturing, as aforesaid, the prisoner untied the deceased from the tree, in such way as to throw him with violence to the ground, and he then and there did knock, kick, stamp, and beat the deceased upon his head, temples, and various parts of his body. That the prisoner then had the deceased carried into a shed room of his house, and there he compelled one of his slaves in his presence, to confine the deceased's feet in stocks, by making his legs fast to a piece of timber, and to tie a rope about the neck of the deceased, and fasten it to a bed post in the room, thereby strangling, choking and suffocating the deceased. And that whilst the deceased was thus made fast in stocks as aforesaid, the prisoner did kick, knock, stamp, and beat him, upon his head, face, breast, belly, sides, back, and body. And he again compelled his two slaves to apply fire to the body of the deceased whilst he *Page 675 
was so made fast as aforesaid. And the count charged that from these various modes of punishment and torture, the slave Sam then and there died. It appeared that the prisoner commenced the punishment of the deceased in the morning, and that it was continued throughout the day; and that the deceased died in the presence of the prisoner and one of his slaves and one of the witnesses, whilst the punishment was still progressing.
Upon the arraignment of the prisoner he demurred generally to the whole indictment, and to each count thereof; and the attorney for the Commonwealth joined in the demurrer, and it was overruled by the Court. The prisoner then filed a plea in abatement, that he had not been examined according to law for the offences alleged in the indictment, by a Court of examination constituted according to the act of Assembly. And he prayed judgment that the indictment be quashed. To this plea the attorney for the Commonwealth replied, alleging that the prisoner had been examined for the offences charged in the indictment by a Court duly and legally constituted, as appeared by the record. And the record of the examining Court was filed with the replication. The record shews that two bills of exception were taken to opinions of the Court in the progress of the trial in the examining Court; but it is unnecessary to notice them further. The facts proved on that examination were obviously the same on which the charge in the indictment was based.
To this replication the prisoner tendered a rejoinder, that after the examination set out in the record filed with the replication, he had been regularly indicted, and had pleaded in abatement that he had not been duly and legally tried by an examining Court, for the offences charged in the indictment; and that after replication to that plea by the Commonwealth, the Court held that he had not been duly and legally tried, and that he *Page 676 
should not be held to answer the indictment, and that the same should be quashed and he discharged therefrom. And he insisted that the Commonwealth was estopped and concluded from relying upon the examination mentioned in that record as a proper and legal examination of the defendant for the offences charged in the indictment, as appeared by the record.
The record filed with the rejoinder set out an indictment containing fourteen counts, the first thirteen of which were the same as the first thirteen in the present indictment. To this indictment the prisoner had pleaded that he had not been duly examined by an examining Court; and the attorney for the Commonwealth replied that the prisoner had been duly and legally examined for the said offences in the said indictment alleged against him, by an examining Court duly and legally constituted according to the laws of Virginia, and this he prayed might be enquired of by the country. To this replication the prisoner demurred; and the attorney for the Commonwealth joined in the demurrer. Whereupon the Court sustained the demurrer; and adjudged that the indictment be abated and quashed, and that the prisoner be discharged therefrom.
The attorney for the Commonwealth objected to the reception and filing of the rejoinder of the prisoner to the Commonwealth's replication; and the Court sustained the objection, and rejected the rejoinder. Whereupon the prisoner excepted.
The prisoner filed three other pleas in abatement varying in form, but all relying upon the fact that he had not been duly and legally tried before an examining Court. To one of these pleas there was a demurrer which was sustained; the others were objected to by the attorney for the Commonwealth and rejected. He then demurred to the replication of the Commonwealth to his plea; and his demurrer was overruled, to all which he excepted. And he then pleaded "not guilty." *Page 677 
The prisoner's trial came on at the April term 1851, when the jury found him guilty, and fixed the term of his imprisonment in the penitentiary at five years. `Whereupon the prisoner moved the Court to set aside the verdict, and grant him a new trial; but the Court overruled the motion, and entered a judgment according to the verdict. The prisoner again excepted, and on his motion, the Court certified that the following facts appeared in evidence upon the trial, to wit: The slave Sam, in the indictment mentioned, was the slave and property of the prisoner. For the purpose of chastising the said slave for the offence of getting drunk, and dealing as the slave confessed and alleged, with Henry and Stone, two of the witnesses for the Commonwealth, he caused him to be tied and punished in the presence of the said witnesses, who were present at the request of the prisoner, (with the exception of slight whipping with peach or apple tree switches before the said witnesses arrived at the scene,) and of several slaves of the prisoner in the manner and by the means charged in the indictment, and the said slave died under and from the infliction of the said punishment, in the presence of the prisoner, and one of his slaves, and one of the witnesses for the Commonwealth. But it did not appear that it was the design of the prisoner to kill the said slave, unless such design be properly inferrible from the manner, means and duration of the punishment; and on the contrary it did appear that the prisoner frequently declared, whilst the said slave was undergoing the punishment, that he believed the slave was feigning, and pretending to be suffering and injured when he was not.
After the judgment, the prisoner moved the Court to direct the clerk, in taxing the costs in this prosecution, that he should not tax as a part of the costs thereof against the prisoner, the allowance theretofore made by the Court for the payment of a per diem allowance to *Page 678 
each juror who served on the trial. Which motion the Court overruled, and decided that such allowance should be taxed as a part of the costs of the prosecution against the prisoner. And the prisoner again excepted; and applied to this Court for a writ of error.
The prisoner was indicted and convicted of murder in the second degree, in the Circuit court of Hanover, at its April term last past, and was sentenced to the penitentiary for five years, the period of time ascertained by the jury. The murder consisted in the killing of a negro man slave by the name of Sam, the property of the prisoner, by cruel and excessive whipping and torture, inflicted by Souther, aided by two of his other slaves, on the 1st day of September 1849. The prisoner moved for a new trial, upon the ground that the offence, if any, amounted only to manslaughter. The motion for a new trial was overruled, and a bill of exceptions taken to the opinion of the Court, setting forth the facts proved, or as many of them as were deemed material for the consideration of the application for a new trial. The bill of exceptions states: "That the slave Sam in the indictment mentioned, was the slave and property of the prisoner. That for the purpose of chastising the slave for the offence of getting drunk, and dealing as the slave confessed and alleged, with Henry and Stone, two of the witnesses for the Commonwealth, he caused him to be tied and punished in the presence of the said witnesses, with the exception of slight whipping with peach or apple tree switches, before the said witnesses' arrival at the scene after they were sent for by the prisoner, (who were present by request from the defendant,) and of several slaves of the prisoner, in the manner and by the means charged in *Page 679 
the indictment; and the said slave died under and from the infliction of the said punishment, in the presence of the prisoner, one of his slaves, and one of the witnesses for the Commonwealth. But it did not appear that it was the design of the prisoner to kill the said slave, unless such design be properly inferrible from the manner, means and duration of the punishment. And on the contrary, it did appear that the prisoner frequently declared while the said slave was undergoing the punishment, that he believed the said slave was feigning and pretending to be suffering and injured, when he was not." The Judge certifies that the slave was punished in the manner and by the meanscharged in the indictment. The indictment contains fifteen counts, and sets forth a case of the most cruel and excessive whipping and torture. The negro was tied to a tree and whipped with switches. When Souther became fatigued with the labour of whipping, he called upon a negro man of his, and made him cob Sam with a shingle. He also made a negro woman of his help to cob him. And after cobbing and whipping, he applied fire to the body of the slave; about his back, belly and private parts. He then caused him to be washed down with hot water, in which pods of red pepper had been steeped. The negro was also tied to a log and to the bed post with ropes, which choked him, and he was kicked and stamped by Souther. This sort of punishment was continued and repeated until the negro died under its infliction. It is believed that the records of criminal jurisprudence do not contain a case of more atrocious and wicked cruelty than was presented upon the trial of Souther; and yet it has been gravely and earnestly contended here by his counsel, that his offence amounts to manslaughter only.
It has been contended by the counsel of the prisoner, that a man cannot be indicted and prosecuted for the cruel and excessive whipping of his own slave. That *Page 680 
it is lawful for the master to chastise his slave; and that if death ensues from such chastisement, unless it was intended to produce death, it is like the case of homicide, which is committed by a man in the performance of a lawful act, which is manslaughter only. It has been decided by this Court, in Turner's Case, 5 Rand., that the owner of a slave, for the malicious, cruel and excessive beating of his own slave, cannot be indicted; yet it by no means follows when such malicious, cruel and excessive beating results in death, though not intended and premeditated, that the beating is to be regarded as lawful, for the purpose of reducing the crime to manslaughter, when the whipping is inflicted for the sole purpose of chastisement. It is the policy of the law in respect to the relation of master and slave, and for the sake of securing proper subordination and obedience on the part of the slave, to protect the master from prosecution in all such cases, even if the whipping and punishment be malicious, cruel and excessive. But in so inflicting punishment for the sake of punishment, the owner of the slave acts at his peril; and if death ensues in consequence of such punishment, the relation of master and slave affords no ground of excuse or palliation. The principles of the common law in relation to homicide, apply to his case, without qualification or exception; and according to those principles, the act of the prisoner, in the case under consideration, amounted to murder. Upon this point we are unanimous.
But what was the law in respect to felonious homicide on the 1st day of September 1849, when the offence was committed. It is to be found in the Sessions Acts of 1847-8, p. 95. By that act it is declared "that unlawful homicide shall be murder of the first degree, murder of the second degree, or manslaughter."
"Murder committed by poison, lying in wait, duress of imprisonment, starving, wilful and excessivewhipping, *Page 681 cruel treatment, or any kind, (not any other kind as the law theretofore was,) `of wilful,' deliberate and premeditated killing, or in the attempt to commit any arson, rape, robbery, or burglary, shall be murder in the first degree, and all other murder shall be murder in the second degree." "Murder in the first degree shall be punished with death." The Judge certifies in his bill of exceptions, as a fact proved in the cause, that "the slave died under and from the infliction of the said punishment." Apply the words of the act of Assembly to this case, and it clearly appears that the crime of the prisoner is not manslaughter, but murder in the first degree.