## Richmond

WARREN WESLEY ESSEX

V.

COMMONWEALTH OF VIRGINIA

Record No. 830505.

October 12, 1984.

Present: All the Justices.

*Lee W. Albrecht (Carroll J. Martin, Jr.,* on brief), for appellant.

*Donald R. Curry, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In this case of first impression, we must determine whether driving under the influence of alcohol, resulting in a fatal collision, can supply the requisite element of implied malice to support a conviction of second-degree murder. The appeal also raises questions concerning the application of the statutory presumption of intoxication in a prosecution for both homicide and driving under the influence.

A jury convicted Warren Wesley Essex of one count of driving under the influence of alcohol (defined as a misdemeanor in Code § 18.2-266) and three counts of second-degree murder for deaths resulting from injuries sustained in an automobile collision. By final order entered November 22, 1982, the trial court entered judgment on the four verdicts.

The collision occurred about 10:45 p.m. on November 20, 1981, at a point on State Route 28 south of its intersection with State Route 17. Essex, driving a Plymouth Duster automobile, entered Route 28, a two-lane, hardsurfaced highway, north of the intersection and headed south. Linda Bates, who was traveling south on Route 28, testified that the Duster entered the highway behind her, passed her across a solid center line, almost struck her car as it returned to the right lane, and ran onto the shoulder of the road, nearly striking a mailbox before it reentered the southbound lane. She said that the Duster passed another vehicle across a solid line and returned to the right lane just in time to avoid a northbound pickup truck. Later, it crossed double solid lines on a curve to pass yet another vehicle. For a distance of six miles, Mrs. Bates watched the car as it swerved from one lane to the other and off the edge of the hard surface.

Although there were "speed bumps" in the pavement north of the intersection, the Duster ran through a red traffic signal at a speed Mrs. Bates estimated at 55 m.p.h. A tractor-trailer truck moving through the intersection on Route 17 "nearly hit the back end of the Plymouth." A mile and a half south of the intersection, the Duster collided with a northbound pickup truck driven by John Gouldthorpe.

Gouldthorpe testified that "[t]he last thing I remember was seeing four headlights, one set in one lane and one in the other." State Trooper Donald Johnson, the investigating officer, testified that when he asked Essex what had happened, the defendant replied, "I was in his lane because my steering had gone . . . I had been having trouble with it all night." An expert mechanic who

inspected the Duster at the officer's request testified that "there was nothing loose" and "no failures" in any part of the steering linkage, and that the only damage he found was a break in the steering column which he said was "due to the impact where the front end had been shoved back about a foot."

Debra Gouldthorpe and Nora Neale, passengers in the pickup, and James Carter, a passenger in the defendant's car, died from injuries sustained in the collision.

Essex was treated at Fauquier Hospital for "a large laceration on his knee" and "a small laceration of the tongue." Dr. Steven Von Elton, the attending physician in the emergency room who examined Essex about 12:30 a.m., testified that Essex was in a "stuperous condition" and that although "the lady next to him was screaming very intensely . . . he was totally unaware of that." Because he could "very easily . . . smell the odor of alcohol . . . at that bedside," Dr. Elton ordered a blood alcohol content test.[1] The test, conducted about two and a half hours after the collision, disclosed an alcohol content of .144 percent. Over the defendant's objection, the trial court admitted testimonial and documentary evidence concerning the results of the test. The defendant assigns error to that ruling.

As further proof of intoxication, the Commonwealth introduced a number of lay witnesses who had an opportunity after the wreck to observe Essex.[2] Louise Bender, one of the first to arrive at the scene, testified that she smelled "some liquor on Essex" and "he was confused." John Mills, a member of the first rescue squad on the scene, found Essex "a little bit disoriented." Mills detected "an odor of alcohol" while he was attending one of the women passengers, but he could not say whether it came from her or the defendant standing nearby. Donald Mason, another member of the rescue squad, found no "indication of alcohol on her whatsoever." Melvin Jones, who rode in the back of the rescue vehicle which transported Essex and the women to the hospital, testified that he "did not smell any [alcohol] on her" but that "there was a strong odor of alcohol on him," his speech "was slurred," and he was not making "very much sense." Trooper Johnson said that

---

[1] Essex had refused to submit to the test contemplated by Code § 18.2-268, the so-called "implied consent" statute.

[2] Code § 4-2(14) provides that "[a]ny person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated."

when he interrogated the defendant at the hospital the odor of alcohol "was easily smelled" and Essex "had a slight glaze to his eyes." Essex told the officer that "the last time he had anything to drink . . . was somewhere around 5 o'clock that night" when he consumed "about three beers."

■ Where death proximately results from the want of ordinary care as practiced by a reasonably prudent person, the causative negligence is actionable as a tort. If the negligence is so gross, wanton, and culpable as to show a reckless disregard of human life, a killing resulting therefrom, although unintentional, is both a tort and a crime, punishable as involuntary manslaughter. *King* v. *Commonwealth,* 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977).

■ Criminal homicides in Virginia are classified as follows:
1. Capital murder,
2. First-degree murder,
3. Second-degree murder,
4. Voluntary manslaughter, and
5. Involuntary manslaughter.

■ Malice, a requisite element for murder of any kind, is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished. *Moxley* v. *Commonwealth,* 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953). Malice may be either express or implied by conduct. *Coleman* v. *Commonwealth,* 184 Va. 197, 201, 35 S.E.2d 96, 97 (1945). Whether the defendant acted with malice is a question for the trier of fact. "Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.' . . . . Implied malice exists when any *purposeful, cruel act* is committed by one individual against another without any, or without great provocation; . . . ." *Pugh* v. *Commonwealth,* 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982) (emphasis added) (citation omitted).

■ The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done "wilfully or purposefully." *Williamson* v. *Commonwealth,* 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942). This requirement of volitional action is inconsistent with inadvertence. Thus, if a killing results from negligence, however gross or culpable, and the killing is contrary to the defendant's intention, malice cannot be implied. In order to evaluate the crime to second-degree murder, the defendant must be shown to have wilfully

or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm.

A motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife. Circumstances can be imagined in which a killing caused by the wrongful use of a motor vehicle might fit any one of the five categories of homicide known to our law. We recognized in *Harrison v. Commonwealth,* 183 Va. 394, 401, 32 S.E.2d 136, 139-40 (1944), that the premeditated use of an automobile to kill can be first-degree murder. If such an act fits within the statutory categories of Code § 18.2-31, such a killing could be capital murder. A killing in sudden heat of passion, upon reasonable provocation, by the use of a motor vehicle, could be voluntary manslaughter. Killings caused by the grossly negligent operation of motor vehicles, showing a reckless disregard of human life, have frequently resulted in convictions of involuntary manslaughter.

We have not, heretofore, had occasion to review a second-degree murder conviction based upon the use of an automobile, but the governing principles are the same as those which apply to any other kind of second-degree murder: the victim must be shown to have died as a result of the defendant's conduct, and the defendant's conduct must be shown to be malicious. In the absence of express malice, this element may only be implied from conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken. Thus, for example, one who deliberately drives a car into a crowd of people at a high speed, not intending to kill or injure any particular person, but rather seeking the perverse thrill of terrifying them and causing them to scatter, might be convicted of second-degree murder if death results. One who accomplishes the same result inadvertently, because of grossly negligent driving, causing him to lose control of his car, could be convicted only of involuntary manslaughter. In the first case the act was volitional; in the second it was inadvertent, however reckless and irresponsible.

What effect has the defendant's degree of intoxication, if any, upon the fact-finder's determination? The defendant may negate the specific intent requisite for capital or first-degree murder by showing that he was so greatly intoxicated as to be incapable of deliberation or premeditation, *Giarratano v. Commonwealth,* 220 Va. 1064, 266 S.E.2d 94 (1980), but voluntary intoxication is no defense to the lesser degrees of homicide, or to any other

crime. *Chittum* v. *Commonwealth,* 211 Va. 12, 17, 174 S.E.2d 779, 783 (1970). Particularly, his state of intoxication, however great, will not repel an inference of malice, implied by the circumstances surrounding his conduct. *Id.*

In some jurisdictions, drunken driving is held to be *malum in se,* and where death is the proximate result of any degree of negligence attributable to intoxication, malice may be inferred by the fact-finder. *See e.g. Shiflet* v. *State,* 216 Tenn. 365, 392 S.W.2d 676 (1965). We do not follow that view because of our distinction between volitional and inadvertent conduct. *Cf. Hamilton* v. *Com.,* 560 S.W.2d 539 (Ky. 1977) (statute penalizing as murder "wanton" conduct causing death, supports murder conviction for unintentional homicide). Other states have enacted vehicular homicide statutes, which create a statutory felony, more serious than manslaughter, covering deaths caused by the negligence of drunken drivers. Ga. Code Ann. § 40-6-393 (Supp. 1984); N.C. Gen. Stat. § 20-141.4 (1983). Our General Assembly has not seen fit to adopt such legislation.

Indeed, Code § 18.2-33, enacted in 1975, provides: "The killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32, is murder of the second degree and is punishable as a Class 3 felony." We think it significant that the General Assembly elected not to expand the ambit of this statute so as to include killings occurring in the commission of drunken driving, a misdemeanor.

We therefore apply the common-law principles mentioned above and hold that the defendant's degree of intoxication, however great, neither enhances nor impairs the set of facts relied upon to establish implied malice. In making the determination whether malice exists, the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death or great bodily harm, and whether it was volitional or inadvertent; not by the defendant's blood-alcohol level.

In *Baker* v. *Marcus,* 201 Va. 905, 114 S.E.2d 617 (1960), we considered, in a civil context, whether malice could be inferred from drunken driving so as to support an award of punitive damages. There we said: "One who knowingly drives his automobile on the highway under the influence of intoxicants, in violation of statute, is, of course, negligent. It is a wrong, reckless and unlawful thing to do; but it is not necessarily a malicious act." *Id.* at

910, 114 S.E.2d at 621. A sober driver may be eminently malicious, while a drunken driver may be merely reckless.[3]

Even though the fact of the defendant's intoxication, and its degree, are irrelevant to the determination whether his conduct was volitional or inadvertent, and thus whether it was malicious or merely negligent, the question remains whether such evidence is relevant for any other purpose. Evidence which tends to establish the probability or improbability of any fact in issue is relevant. *See Epperly* v. *Commonwealth,* 224 Va. 214, 230, 294 S.E.2d 882, 891 (1982).

Drunken driving is not only unlawful in itself, but it tends to make the defendant's dangerous conduct more dangerous. A sober but reckless driver may rely on his skill and prompt reflexes to extricate himself from any emergency created by his reckless driving. A drunken driver has dulled his perceptions, blunted his skill, and slowed his reflexes in advance. The same reckless driving is more dangerous at his hands than it would be if he were sober, and his conduct is therefore more culpable. Intoxication, therefore, is relevant as an aggravating factor, increasing with its degree, bearing upon the relative culpability of the defendant's conduct, even though it is irrelevant to the determination of malice.

Intoxication is, accordingly, relevant to a determination of the degree of the defendant's negligence: whether ordinary, gross, or wanton. *See Griffin* v. *Shively,* 227 Va. 317, 315 S.E.2d 210 (1984). It may serve to elevate the defendant's conduct to the level of "negligence so gross, wanton, and culpable as to show a reckless disregard of human life," a requisite element for a conviction of involuntary manslaughter. *King* v. *Commonwealth,* 217 Va. at 607, 231 S.E.2d at 316.

The defendant's degree of intoxication is also relevant to a determination of the appropriate quantum of punishment. In Virginia, the fact-finder, whether judge or jury, has the duty, if it convicts the defendant, of fixing his punishment, usually within wide limits. The principal criterion for the discharge of the responsibility must be the relative seriousness of the offense, within

---

[3] Some courts reason that one who deliberately drives a car to a place remote from home for the purpose of drinking, knowing that he will have to drive home under the influence of alcohol, then, after becoming intoxicated, drives recklessly, thereby acts so wantonly, and with such a disregard of human life as to supply an inference of malice. *See e.g. People* v. *Watson,* 30 Cal. 3d 290, 637 P.2d 279, 179 Cal. Rptr. 43 (1981). We do not think the premises support the conclusion reached.

its grade. All aggravating and mitigating factors shown by the evidence must be taken into account. Voluntary intoxication, in the case of a driver, is an aggravating factor properly considered for this purpose.

Applying these principles to the record before us, we find the evidence, viewed in the light most favorable to the Commonwealth, insufficient to support a finding of implied malice. The defendant·was intoxicated and guilty of an appalling degree of reckless driving. His multiple tortious acts conjoined as proximate causes of three tragic deaths, *see King* v. *Commonwealth,* 217 Va. at 607-08, 231 S.E.2d.at 317 (dissenting opinion of Poff, J.), and clearly met the *King* standard for proof of involuntary manslaughter: an "accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *Id.* (majority opinion) at 607, 231 S.E.2d at 316. The Commonwealth, however, has the burden of proving malice beyond a reasonable doubt. The jury could only speculate, upon this evidence, whether the defendant embarked upon his ill-fated course of conduct wilfully and with a malicious purpose. No facts were proved from which such a purpose can be inferred. The distinction is close but crucial.

> [T]he intent to do an act in wanton and wilful disregard of the *obvious likelihood* of causing death or great bodily injury is a malicious intent . . . . [A] motorist who attempts to pass another car on a "blind curve" may be acting with such criminal negligence that if he causes the death of another in a resulting traffic accident he will be guilty of manslaughter. And such a motorist may be creating fully as great a human hazard as one who shoots into a house or train "just for kicks," who is guilty of murder if loss of life results. The difference is that in the act of the shooter there is an element of *viciousness* — an extreme indifference to the value of human life — that is not found in the act of the motorist.

*Blackwell* v. *State,* 34 Md. App. 547, 553-54, 369 A.2d 153, 158 (1977) (quoting Perkins, Criminal Law § 1 p. 37 (2d ed. 1969)) (emphasis added). Because the evidence was insufficient to support a finding of malice, it was error to instruct the jury that it might find the defendant guilty of second-degree murder.

Since the case must be remanded and may be retried, we must consider certain additional assignments of error. Denying the defendant's motion *in limine,* the trial court ruled that the results of the blood-alcohol test performed at the hospital would be admissible in evidence in the trial of both the homicide charges and the drunken driving charge. The court also held (and later instructed the jury) that the percentage of alcohol disclosed by the test raised a rebuttable presumption of intoxication, but that the presumption applied only to "the charge of driving under the influence" and not to the homicide charges. As appears from an order of record, the defendant's motion to sever the misdemeanor count from the three felony counts was denied.

On appeal, the defendant contends, as he did below, that the results of the blood tests were inadmissible and the evidence insufficient in all the cases; that the presumption of intoxication did not apply in any case; and that the trial court should have granted his motion to sever. We find no merit in the constitutional, statutory, or evidentiary arguments the defendant urges in support of his first contention. We agree, however, that the presumption was inapplicable.

Addressing the first contention, we are of opinion that the testimony and hospital record concerning the results of the hospital test were admissible as probative evidence in the homicide cases and that they are admissible as "other evidence" of intoxication in the drunken driving case.

As we have said, when death is the proximate result of criminal negligence in the operation of a motor vehicle, the degree of a driver's intoxication is relevant as an aggravating factor, tending to show the relative dangerousness of his conduct. Proof by chemical analysis of the percentage of alcohol in the blood is relevant to a determination of the degree of intoxication. We see no reason why the results of such an analysis should not be admissible if based upon a foundation which tends to ensure the reliability of the test equipment and procedures, the integrity of the chain of custody of the blood specimen, and the technical competence of the person who performed the analysis. *See generally Rodgers* v. *Commonwealth,* 197 Va. 527, 529-31, 90 S.E.2d 257, 259-60 (1955). Whether the foundation is sufficient is a question within the sound discretion of the trial judge. If the judge finds the foundation sufficient, the credibility of the witnesses and the weight to be accorded the evidence are matters within the province of the

jury. Suffice it to say that our review of the record shows no defect in the foundation evidence upon which the trial court based its ruling admitting the results of the blood-alcohol test in the homicide cases.

We also agree with the trial judge that this evidence was competent for purposes of the drunken driving prosecution. Code § 18.2-268 provides that a certificate attesting to the results of a blood-alcohol analysis, performed in substantial compliance with the procedural steps detailed in the statute, is self-authenticating as evidence of the misdemeanor defined in § 18.2-266. *See Stroupe v. Commonwealth,* 215 Va. 243, 245, 207 S.E.2d 894, 896 (1974). The certificate is not, however, the only evidence the statute authorizes as proof of intoxication, and nothing in the statute excludes evidence of the results of other scientific tests if such evidence is otherwise admissible under the rules. "[T]he court shall . . . consider such other relevant evidence of the condition of the accused as shall be admissible in evidence." Code § 18.2-268(i).

We hold, therefore, that the evidence of the results of the hospital test, competent because supported by a proper foundation, constituted "other relevant evidence" within the intendment of the statute and was properly admitted as proof of drunken driving.

However, we conclude that this evidence, though probative, raised no legal presumption of intoxication. Code § 18.2-269 expressly provides that the presumptions it creates arise only when a blood-alcohol test is conducted "in accordance with the provisions of § 18.2-268."[4] The record of the pretrial hearing shows, and the Attorney General concedes, that the hospital test was not conducted in such manner. Yet, the trial court, borrowing from the language of § 18.2-269(3), instructed the jury that "[i]f there was at the time zero point 10 percent or more of alcohol in the accused's blood it shall be presumed that the accused was under the influence of alcoholic intoxicants." Since the only evidence to support that instruction was derived from the test performed at the hospital, we hold that the instruction constituted prejudicial error in the trial of the drunken driving charge.

The foregoing error was compounded by virtue of the consolidation of the drunken driving case with the homicide cases for trial.

---

[4] Prior to amendment, Acts 1983, c. 504, this language read "in accordance with the provisions of § 18.2-266." Manifestly, the amendment merely corrected a clerical error in the statute.

The court instructed the jury that the presumption of intoxication applied only to the drunken driving charge and not to the homicide charges, but it is difficult to conceive of a jury capable of applying a legal presumption in one case, while divorcing it from others tried at the same time. If the cases are retried, however, the presumption of intoxication will not apply, and the defendant's motion to sever will be moot. *See* Rule 3A:10(b).

For the foregoing reasons, the convictions of second-degree murder will be vacated and the three homicide cases remanded for further proceedings, consistent with this opinion, wherein the Commonwealth may, if it be so advised, retry the defendant for offenses no greater than involuntary manslaughter. The conviction of driving under the influence of alcohol will also be reversed and remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

POFF, J., concurring in part and dissenting in part.

I support the majority's conclusion that the testimony and records concerning the blood test were admissible in evidence in all the cases. I concur in the holding that the presumption instruction constituted prejudicial error in all the cases. And I agree that there must be a new trial of all counts charged in the indictment. I disagree, however, with the majority's view of the law of criminal homicide.

Negligence resulting in an accidental death may be a tort or a crime, or both. The character of such negligence is the determinative factor. Ordinary negligence, *i.e.,* the want of ordinary care as practiced by a reasonably prudent person, is actionable as a tort. Negligence so gross as to manifest depravity of mind and a callous disregard for human safety is criminal negligence, and if death results, constitutes criminal homicide. Unlike violations of some statutory rules of the road, the offense of driving under the influence of intoxicants constitutes criminal negligence. *See King* v. *Commonwealth,* 217 Va. 601, 606, 231 S.E.2d 312, 316 (1977), *citing Beck* v. *Commonwealth,* 216 Va. 1, 216 S.E.2d 8 (1975); *Albert* v. *Commonwealth,* 181 Va. 894, 902, 27 S.E.2d 177, 180 (1943).

In Virginia, criminal homicide is divided into two major categories, murder and manslaughter. Malice is the element which distinguishes the two. *Moxley* v. *Commonwealth,* 195 Va. 151, 157,

77 S.E.2d 389, 393 (1953). Malice may be either express or implied by conduct, *Coleman* v. *Commonwealth,* 184 Va. 197, 201, 35 S.E.2d 96, 97 (1945), and "whether a defendant acted with malice is generally a question to be decided by the trier of fact," *Pugh* v. *Commonwealth,* 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982).

The level of culpability of criminal negligence determines the grade of the offense. Between the class of deliberate deeds committed with premeditated intent to kill, which is the essence of murder of the first degree, and the type of negligence inherent in the definition of involuntary manslaughter there is a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice which distinguishes murder of the second degree from manslaughter. More than a century and a half ago, this court observed that a killing caused by "criminal carelessness" could constitute "murder in the second degree". *Whiteford* v. *Commonwealth,* 27 Va. (6 Rand.) 721, 724-25 (1828).

While, as the majority notes, we have never, until now, had occasion to review a second-degree murder conviction based upon malice inferred from the negligent operation of a motor vehicle, we have commented upon the question in rather unmistakable language.

> When men, while drunk or sober, drive automobiles along highways and through crowded streets recklessly, the killing of human beings is a natural and probable result to be anticipated. When a homicide follows as a consequence of such conduct, a criminal intent is imputed to the offender and he may be punished for his crime. The precise grade of such a homicide, whether murder or manslaughter, depends upon the facts of the particular case.

*Goodman* v. *Commonwealth,* 153 Va. 943, 952, 151 S.E. 168, 171 (1930).

I acknowledge that the language in *Goodman* is *dicta.* But it is in harmony with the common law in most jurisdictions. The great weight of authority holds that a motorist's negligence may be so gross and culpable as to imply a malicious intent to kill and that, in determining whether the homicide is manslaughter or murder,

intoxication is an aggravating factor. *See* Annot., 21 A.L.R.3d 116 (1968).

The vehicular homicide statutes adopted by some states abandon the definitional differences the common law makes between manslaughter and murder and define homicide resulting from the criminal negligence of the driver of a motor vehicle as a unique offense, graded according to the nature and extent of the driver's negligence. *See Traffic Laws Annotated* § 11-903. *See also* Model Penal Code § 210.4, at 88. Virginia has no such statute, and as defined by the majority opinion, vehicular homicide is hereafter relegated to the lowest grade of criminal homicide. The degree of culpability is immaterial.

Reaffirming what we said in *Whiteford* and *Goodman* and adopting what appears to be the judicial consensus, I would hold that where the evidence is sufficient to show that the driver of a motor vehicle, whether drunk or sober, is guilty of criminal negligence which is the sole proximate cause of a homicide, such evidence raises a question of fact whether the offense is manslaughter or murder of the second degree. Unless the finding made by the trier of fact is plainly wrong or without evidence to support it, the finding should be upheld by this Court.

I am of opinion that the evidence of record in this case is fully sufficient to justify the jury's finding that the defendant's negligence was the sole proximate cause of three deaths and that such negligence was so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life as to imply the element of malice charged in the homicide counts of the indictment.

THOMAS, J. joins in concurring and dissenting opinion.