COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Bumgardner
Argued at Salem, Virginia


DAVID LEE JONES
                                    MEMORANDUM OPINION* BY
v.          Record No. 1393-97-3    JUDGE RUDOLPH BUMGARDNER, III
                                         JUNE 16, 1998
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                     William N. Alexander, II, Judge

              J. Patterson Rogers, 3rd (Jon I. Davey, on
              brief), for appellant.

              Linwood T. Wells, Jr., Assistant Attorney
              General (Richard Cullen, Attorney General, on
              brief), for appellee.



     David Lee Jones was indicted for murder, use of a firearm in

the commission of murder, and possession of a firearm after

having been convicted of a felony.  The defendant pleaded guilty

to possession of a firearm after having been convicted of a

felony and not guilty to the other two charges.  A jury convicted

him of second degree murder and use of a firearm in the

commission of murder.  He appeals the conviction on the grounds

there was insufficient evidence to prove murder.  Finding no

error, we affirm the judgment of conviction.

     Where an appellant challenges the sufficiency of the

evidence, the evidence must be viewed in the light most favorable

to the Commonwealth, granting to it all reasonable inferences

---

*Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

fairly deducible from it.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  This Court does not substitute its judgment for that of the trier of fact.  See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). Unless that finding is plainly wrong, or without evidence to support it, it shall not be disturbed on appeal.  Code § 8.01-680; George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991), cert. denied, 503 U.S. 973 (1992).

The victim, Marguerite Whitfield, was a seventeen-year-old girlfriend of the defendant.  She picked him up at 4:30 p.m. after she finished work.  They went to her mother's trailer. Justin Rowland, a twelve year old who lived in the trailer park, testified he heard running through the trailer, saw the back door open and then close.  Then he heard hollering before and after running, a "pop" within 10-15 seconds, and more running.  Another resident of the trailer park heard a commotion and heard the defendant yell, "I didn't mean to do it."  Robert Paggans heard the defendant yell for help, observed blood on his shirt and heard him hysterically say, "I shot my girlfriend, it was an accident."

The police found the victim on the floor of the trailer. Six inches from her head was a handgun, a 25-caliber automatic, with a live projectile stuck in the action of the gun holding the receiver half way back.  The defendant made three statements to the police.  On the day of the shooting he told them that he had

-2-

brought the loaded pistol to the trailer.  He placed it on the counter.  The victim became distraught over breaking up with him, picked up the gun, and said she intended to kill herself.  Before he could reach her, the gun fired and she fell to the floor. Later in that first interview, the defendant told police that he had tried to grab the gun and it went off.  Eventually, he said he pulled the gun and it went off.

At a second interview, the defendant told police that he was going to scare the victim.  He pulled the gun, pulled the hammer back, and it went off.  He admitted pointing the gun, but said it was not loaded.  During a third statement he repeated the version he had given at the second interview.

The medical examiner testified that a single gunshot wound killed the victim.  It pierced her temple and traveled through her brain.  The muzzle of the gun was touching her skin at the time it discharged.

The defendant testified in his defense.  He stated that he had borrowed the gun from his brother because he felt threatened, although he never checked to see if the gun was loaded.  He did not specify the reasons for the threat against him.  Jones went on to state that he had never fired the weapon and was not familiar with its operation.  He equivocated about whether the gun was loaded.  Eventually he stated that he knew there were bullets in the magazine but did not know that one was chambered. Jones said he was messing around with the gun.  When asked why

he was doing that, he answered, "I don't know why." On cross-examination he admitted pointing the gun at the victim and trying to scare her. He pulled the hammer back to dry fire it, but he insisted that he did not know a round was in the chamber. He had no explanation for why he was dry firing it. The defendant did not recall making his first statement to police and denied that he and the victim were breaking up.

The evidence in this case presents a classic case of conflicting, at times confusing, pieces of evidence from which differing inferences may be made and varying conclusions drawn. Determining what happened in fact from the pieces of evidence presented at trial can only be determined by the jury conscientiously hearing and evaluating the credibility, weight and value of that evidence.

> Suffice it to say, that the evidence and the reasonable inferences therefrom were sufficient to present the question, whether the death of [the victim] was a result of the criminal agency of the defendant, or was merely an accident for which the defendant was not responsible. If the jury believed that the evidence disclosed the criminal agency of the defendant, they were further to ascertain, under the instructions, the grade of the offense. These issues were peculiarly for the consideration of a jury.

Harrison v. Commonwealth, 183 Va. 394, 401, 32 S.E.2d 136, 140 (1944).

There is evidence from which reasonable men could find beyond a reasonable doubt that the defendant murdered Marguerite Whitfield in the second degree. The weapon discharged the fatal

bullet when it was pressed against the victim's head.  The
defendant's own words put the gun in his hand when it discharged.
The permissible inference that malice may be found from the
deliberate use of a deadly weapon, <u>Satcher v. Commonwealth</u>, 244
Va. 220, 257, 421 S.E.2d 821, 843 (1992), <u>cert.</u> <u>denied</u>, 507 U.S.
933 (1993), alone is sufficient to permit the jury to find the
act was done with malice.

Finding that there is sufficient credible evidence to
support the finding of the jury, we affirm.

<u>Affirmed.</u>

Benton, J., dissenting.

I would hold that the evidence in this record is insufficient to support a finding of malice. Although David Lee Jones used a firearm to kill the victim, the circumstances were such that the jury could not have inferred beyond a reasonable doubt that Jones acted with malice.

"Malice is an essential element of murder and is what distinguishes it from the crime of manslaughter." Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997).

> "Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.' . . . Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation; . . . ."

Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984) (citations omitted). Implied malice "may only be [inferred] from conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken." Id. at 281, 322 S.E.2d at 220. Thus, it necessarily follows that "if a killing results from negligence, however gross or culpable, and the killing is contrary to the defendant's intention, malice cannot be [inferred]." Id. at 280, 322 S.E.2d at 220. "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." Canipe, 25 Va. App. at 642, 491 S.E.2d at 753. However, the principle is well established that "[i]n making the determination whether malice

exists, the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death or great bodily harm, and whether it was volitional or inadvertent." Essex, 228 Va. at 282, 322 S.E.2d at 221.

The Commonwealth relied solely on circumstantial evidence to prove malice. Direct evidence proved that Jones shot Marguerite Whitfield, his romantic friend, but no direct evidence proved that he did so maliciously. The jury could only have inferred Jones' malicious state of mind through his use of a deadly weapon. See Morris v. Commonwealth, 17 Va. App. 575, 578, 439 S.E.2d 867, 870 (1994) (trier of fact may infer malice from the use of a deadly weapon unless the evidence raises a reasonable doubt whether malice existed). No other evidence tended to prove malice. Indeed, the evidence raised a reasonable doubt that malice existed.

The only evidence concerning the events that led to the shooting came from the statements and testimony of Jones. Jones testified that he and Whitfield had been dating for two years. The day before the killing, Jones and Whitfield had an argument; however, they had resolved their differences that night. Jones testified that on the day of the killing, Whitfield drove him from a convenience store to Whitfield's mother's trailer where they watched videos. Jones had a pistol in his back pocket while he and Whitfield watched the videos.

Jones testified that his brother had given him the pistol

the previous day because Whitfield had told Jones that her cousin and brother were threatening to harm him. She told him to "watch his back." Jones testified that he had had "problems" with Whitfield's cousin and brother. Jones also testified that he had never handled this particular gun before, that he did not know if the gun was loaded, and that he knew the magazine had bullets in it because he assumed his brother wouldn't give him an empty gun for protection.

Jones testified that after he and Whitfield watched videos, they decided to go outside because it was hot in the trailer. When he stood to go outside, Jones took the gun out of his pocket and was "just messing around with it." As Jones and Whitfield walked toward the back door, Whitfield told Jones to stop playing with the gun. Jones told her "there weren't nothing in it" and pulled the hammer back on the gun. He testified the gun "just went off," killing Whitfield.

In a taped statement to the police after the incident, Jones related several versions of the circumstances surrounding the shooting. He said he had the gun because Whitfield's cousin had accused him of informing the police of the cousin's drug distributions. He initially stated Whitfield grabbed the gun from the counter where Jones had left it after removing it from his pocket. When Whitfield had the gun, she threatened to kill herself and ran towards the back door. Jones ran after her. However, the gun fired before he reached her. Later, Jones

stated that the gun fired when he tried to grab it from Whitfield. Eventually, Jones told the police that he and Whitfield were just playing and that he was displaying the gun to scare her when the gun fired.

In a second taped interview, Jones stated that after he and Whitfield watched videos, they began to walk to the door to go outside because the trailer was hot. As they got to the door, he removed the gun from his back pocket playfully to scare Whitfield. He was "messing around" with the gun, pointing it at her, and stating nothing was in it. He was about an arm's distance away from her when he pulled the hammer, killing her. In a third interview with police, he essentially related the same events.

Although Jones' testimony and statements are confused and somewhat contradictory, they provide the only evidence of the events surrounding the shooting. Neither of the conflicting versions tends to prove a malicious killing. Furthermore, although the conflicting statements may raise a suspicion that the killing occurred in another manner, "a suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction." Bishop v. Commonwealth, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984).

This evidence fails to prove beyond a reasonable doubt that Jones "willfully and deliberated engaged in a cruel act that was likely to cause great bodily harm to the victim." Canipe, 25 Va.

App. at 644, 491 S.E.2d at 754. "[W]here the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" Moran v. Commonwealth, 4 Va. App. 310, 314, 357 S.E.2d 551, 553 (1987) (citation omitted). This evidence fails to exclude the reasonable hypothesis that Jones acted "carelessly and negligently, but without malice." Mundy v. Commonwealth, 144 Va. 609, 615, 131 S.E. 242, 244 (1926); see also Essex, 228 Va. at 281, 322 S.E.2d at 220.

Because I believe a reasonable jury could not have found malice under these circumstances, I would reverse the conviction and remand for a new trial.