COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia


JACOB JACKSON FELTS

                           MEMORANDUM OPINION* BY
v.     Record No. 1997-98-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                              OCTOBER 5, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GRAYSON COUNTY
J. Colin Campbell, Judge

James T. Ward (Joseph H. McGrady; McGrady &
McGrady, on briefs), for appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (Mark L. Earley, Attorney General,
on brief), for appellee.


Jacob Jackson Felts (appellant) was convicted of aggravated
involuntary manslaughter, in violation of Code § 18.2-36.1(B),
by causing death as the result of driving an automobile while
under the influence of alcohol. On appeal, he argues the trial
court erred in refusing to suppress the certificate and results
of his blood alcohol analysis. For the following reasons, we
affirm.

I.

"In reviewing a trial court's denial of a motion to
suppress, '[t]he burden is upon [the defendant] to show that

---

*Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted). While we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[1] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

The evidence established that Trooper James Blevins (Blevins) received a dispatch at 11:26 p.m. to investigate an accident in Grayson County, Virginia. Upon his arrival at the accident scene, Blevins found appellant's wrecked vehicle, which had been traveling southbound on Highway 89. He described the accident as follows:

> [The car] had run off the right shoulder of the roadway traveling two hundred and seventy-six (276) feet. . . . Then it had reentered the roadway as it was traveling South and gone, was going broadside for one hundred and ninety (190) feet before it struck the bank. Then it went on another sixty-six (66) feet, struck a culvert in a driveway. At this time, the vehicle went airborne and crossed a woven wire fence. . . . Went airborne for one hundred and fifty (150) feet, then it came back in,

---

[1] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (citations omitted).

- 2 -

to the ground and made a large area in the field.  It went back in the air.  Traveled approximately seventy-five (75) more feet and continued on, crossed a, through a fence and struck some pine trees, two hundred and twenty-five (225) feet from where it had come down from being airborne for a hundred and fifty (150) feet.  The total distance of this accident measured nine hundred seven (907) feet.

The car came to rest "on its top after it struck a tree."  The weather was clear, and the road was dry.  Blevins found a wine bottle and loose beer bottles on the ground at the scene near the vehicle.  Commonwealth's Exhibit 9, a photo of the inside of the car, showed beer bottles inside the vehicle.  A passenger in appellant's car, Carl Moser, was pronounced dead at the scene.

When Blevins arrived, rescue workers "had [appellant] loaded" in their emergency vehicle to transport him to Twin County Regional Hospital.  At the hospital, medical personnel attended to appellant's injuries.  "[T]hey told [Blevins] that [appellant] was going to be taken to Baptist Hospital pretty soon."  Blevins advised appellant of his Miranda rights and of the implied consent law, after which appellant voluntarily agreed to take a blood test.  At 2:46 a.m., a lab technician withdrew the blood.  The parties stipulated that the blood sample was taken three (3) hours and twenty-six (26) minutes after the accident.  An analysis of the blood sample revealed appellant's blood alcohol content to be ".08% by weight by volume."

Dr. James Valentour was qualified as an expert in toxicology. Based on minimum and maximum dissipation rates, he opined that, at the time of the accident, appellant's blood alcohol would have been between "a .11 or .12 to as high as .19 or .20." Valentour described how certain amounts of alcohol affect one's physical abilities. Based on his data, Valentour opined that appellant was under the influence of alcohol at the time of the accident.

The trial court refused to suppress the blood test results. However, it ruled that, because appellant was not timely arrested, "the results of the tests creates [sic] no legal presumption of intoxication." Because appellant "was being transported to another hospital in another state, . . . exigent circumstances justified the taking of the defendant's blood without a search warrant." The trial court relied solely on the testimony of the toxicologist to interpret and explain the significance of the blood alcohol content of appellant's blood.

Appellant was subsequently tried by the court and stipulated to the following:

> [I]f the Court considers the evidence of the blood together with the evidence presented by the Commonwealth at the suppression hearing and evidence contained in the transcript of the preliminary hearing, it would be sufficient to convict beyond a reasonable doubt of . . . some degree of involuntary manslaughter.

Although the trial court relied solely on the testimony of the toxicologist at the suppression hearing, he nevertheless admitted the certificate of analysis into the record at trial. Based on the evidence presented and accepting appellant's stipulation, the trial court convicted appellant of aggravated involuntary manslaughter, in violation of Code § 18.2-36.1.

## II.

Appellant contends that the trial court erred in refusing to suppress the results of the blood alcohol analysis. Because he was arrested over two hours after the alleged offense, appellant asserts that he did not consent to have his blood alcohol tested. Moreover, appellant contends that because he showed no indications that he was intoxicated, the officer had no probable cause to arrest him and take a blood sample based on exigent circumstances.[2]

The Commonwealth concedes on appeal, as it did at trial, that because police failed to arrest appellant for driving under the influence of alcohol within two hours of the accident, the statutory presumptions of Code § 18.2-269 were inapplicable.

_____

[2] As a preliminary matter, the Commonwealth argues that Rule 5A:18 bars appellant from arguing on appeal that Blevins had no probable cause to arrest him and take a blood sample based on exigent circumstances. We conclude from the transcript that the trial court specifically found that "exigent circumstances justified the taking of [appellant's] blood without a search warrant" and defense counsel objected to this ruling. Therefore, Rule 5A:18 does not bar our review of the merits of this appeal. See Wright v. Commonwealth, 4 Va. App. 303, 305, 357 S.E.2d 547, 549 (1987).

However, the Commonwealth asserts that other evidence presented, including the testimony of the toxicologist and the photographs of the accident scene, proved appellant's intoxication at the time of the accident.

A person arrested for driving under the influence within two hours of such offense is deemed to have consented to a blood alcohol test.  See Code § 18.2-268.2.[3]  Test results that are obtained in compliance with the requirements of Code § 18.2-268.2 are entitled to certain rebuttable presumptions. See Code § 18.2-269.[4]  However, if an accused driver is not

_____

[3] Code § 18.2-268.2 provides in pertinent part:

> Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, . . . in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266 or § 18.2-266.1 or of a similar ordinance within two hours of the alleged offense.

[4] Code § 18.2-269 provides in pertinent part:

> A. In any prosecution for [involuntary manslaughter under Code § 18.2-36.1,] . . . the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of a sample of the accused's blood or breath to determine the alcohol content of his blood . . . shall give rise to the following rebuttable presumptions:

>              *    *    *    *    *    *    *

- 6 -

timely arrested, his or her consent is considered invalid, prohibiting the Commonwealth from relying on the statutory presumption.  See Essex v. Commonwealth, 228 Va. 273, 286, 322 S.E.2d 216, 223 (1984); Castillo v. Commonwealth, 21 Va. App. 482, 490-91, 465 S.E.2d 146, 150 (1995).

The facts of the instant case are remarkably similar to those in Tipton v. Commonwealth, 18 Va. App. 370, 444 S.E.2d 1 (1994).  In both cases, the defendant was injured in an accident, was about to be transported for medical care, was read the implied consent law, and a blood sample was taken.  See id. at 371-72, 444 S.E.2d at 2.  In both cases, the blood tests were administered more than two hours after the accident, and the Commonwealth relied upon expert testimony to establish the blood alcohol level in each defendant's blood.  See id.

Similar to Tipton, the Commonwealth in the instant case conceded at trial that it was not relying on the rebuttable presumption of Code § 18.2-269 to prove appellant's intoxication.  See id. at 372, 444 S.E.2d at 2.  Instead, the Commonwealth asserted that the officer was entitled to conduct a search of appellant and seize his blood because there was

(3) If there was at that time 0.08 percent or more by weight by volume of alcohol in the accused's blood or 0.08 grams or more per 210 liters of the accused's breath, it shall be presumed that the accused was under the influence of alcohol intoxicants at the time of the alleged offense.

sufficient probable cause to justify a search and exigent circumstances existed to justify noncompliance with the warrant requirement of the Fourth Amendment.[5]  See id. at 372-73, 444 S.E.2d at 2.

Based upon the rationale in Tipton, we conclude that the results of the blood alcohol analysis, as introduced through the testimony of the toxicologist, was properly admitted as other relevant evidence that appellant was driving under the influence of alcohol.  Despite the absence of a timely arrest or warrant, a person may be required to submit to a search, here, a blood test, based on probable cause and exigent circumstances.  See id. at 373, 441 S.E.2d at 3 (noting that a blood test is a "search" within the meaning of the Fourth Amendment).  Such warrantless searches do not violate any constitutional rights so long as the search is supported by probable cause, the evidence

---

[5] The Commonwealth's Attorney stated the following:

> We're not asking the Court to admit this blood analysis of the defendant under 18.2-268 or any part of that for any presumption of its content.  The Commonwealth would assert that this falls under other relevant evidence and by that we're not, the Commonwealth [concedes] that we do not get any presumption under [Code § 18.2-269]. . . . And I guess we want to make it crystal clear, we're not asking [for the benefit of the presumption].  We don't think we can have that.  We think any evidence as to the alcohol or the influence of alcohol would have to come in through basically the toxicologist.

is of an evanescent nature, and the means and procedures employed are reasonable.  See Schmerber v. California, 384 U.S. 757, 768-71 (1966); see also Tipton, 18 Va. App. at 373-74, 441 S.E.2d at 3.  Thus,

> exigent circumstances justif[y] warrantless seizure of a blood sample for alcohol level analysis when police ha[ve] probable cause to arrest and fear[ ] loss of evidence by dissipation of alcohol in the blood. However, a warrantless search of that kind will be upheld only if (1) the process is a reasonable one which is performed in a reasonable manner; (2) there was in advance "a clear indication that in fact [the evidence sought] will be found;" and (3) there were exigent circumstances, such as a need to take the test before the percentage of alcohol in the blood diminished.

Tipton, 18 Va. App. at 373, 441 S.E.2d at 3 (citing Schmerber, 384 U.S. at 766-72).

In this case, the presence of wine and beer at the scene inside the wrecked car, and the distance and manner that appellant's car traveled after leaving the road, established sufficient probable cause of involuntary manslaughter and driving under the influence to enable Blevins to obtain a warrant for a search of appellant.  See Schmerber, 384 U.S. at 768-71; Tipton, 18 Va. App. at 373-74, 441 S.E.2d at 3.  Due to the evanescent nature of blood alcohol and because appellant was being transported to another hospital, we agree that exigent circumstances justified the warrantless arrest and search of appellant.  See id.  Moreover, because the Commonwealth relied

on expert opinion to explain the significance of appellant's blood alcohol level and did not rely on the presumption in Code § 18.2-269, the trial court did not err in allowing the test results in evidence.  See id. at 374, 444 S.E.2d at 3. Accordingly, we affirm appellant's conviction.

Affirmed.