PRESENT: All the Justices

GEORGE TREVON WATSON-SCOTT

v. Record No. 190016

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE CLEO E. POWELL
December 12, 2019

FROM THE COURT OF APPEALS OF VIRGINIA

George Trevon Watson-Scott ("Watson-Scott") appeals the ruling of the Court of

Appeals that the evidence was sufficient to support his murder conviction because, according to

Watson-Scott, the Commonwealth failed to prove that he acted with malice when he fired

multiple shots from a handgun that resulted in the death of Carmella Winston ("Winston").

I. BACKGROUND

Shortly after 2:30 p.m. on October 9, 2016, Jean Redwood ("Redwood"), Winston's

mother, left her home with Winston and Winston's three children to run some errands. Redwood

drove her car with Winston riding in the passenger seat and the children in the back seat. As she

drove, Redwood saw her eldest daughter, Jewel Henry ("Henry") walking down the street.

Redwood stopped and picked her up and gave her a ride to the corner of Hill Street and St. James

Street, which was Henry's destination. Redwood turned onto St. James Street and parked. After

about five minutes, Henry left the car and began walking back toward Hill Street.

Shortly after Henry left the car, Redwood heard a gunshot and ducked down. She looked

up and saw glass falling off her shoulder. When she looked at Winston, she saw that Winston

had been struck by a bullet in the corner of her eye. Redwood did not see anyone else on the

street and did not know where the shot came from. After initially getting out of the car to yell

for help, she got back into the car, made a U-turn and drove to the home of one of Winston's

friends who lived nearby on Hill Street. Winston subsequently died from the gunshot wound she suffered to her head.

Kenneth Moore ("Moore") was smoking marijuana in his car on St. James Street around the time of the shooting. Moore was parked facing north toward Hill Street and another car, which had two men inside it, was parked in front of him. Moore's wife, Shameek Massey ("Massey"), had left the car to take some groceries inside. As Moore was sitting in his car, he noticed two men with bicycles who were walking along the opposite side of St. James Street toward Hill Street. One of the two men was subsequently identified as Watson-Scott; his companion was unidentified.

After he noticed the two men, Moore looked down at his phone. Approximately one minute later, Moore heard gunshots. He looked up and saw Watson-Scott about 20 to 25 feet away firing a handgun up St. James Street toward Hill Street. Moore did not see the other man who had been walking with Watson-Scott. Moore then got out of his car. After Watson-Scott fired four or five shots, Moore heard him curse. Watson-Scott then rode away on his bike. According to Moore, aside from the two men in the car in front of him and his wife, he did not see anyone else on the street.

Massey was standing outside Moore's car when she heard the gunshots. According to Massey, she saw a man firing a gun toward Hill Street. She did not recall seeing anyone else on the street other than Moore and the two men in the car in front of Moore's car.

Watson-Scott was subsequently arrested and charged with the murder of Winston. At trial, after the Commonwealth put on its evidence establishing that Watson-Scott was the person firing the gun, Watson-Scott moved to strike, arguing that the Commonwealth failed to prove malice. Specifically, Watson-Scott argued that there was no evidence that he intended to kill

2

Winston and, because there was no evidence of anyone else on the street that he was shooting at, the doctrine of transferred intent could not apply. In response, the Commonwealth argued that the fact that Watson-Scott intentionally fired a handgun multiple times down a street was sufficient evidence of malice. The trial court acknowledged that there was no evidence that Watson-Scott was shooting at anybody, but questioned whether an inference might be drawn from the fact that Watson-Scott's companion was no longer present when the shooting started. Specifically, the trial court stated:

> [W]e know there was another person out there on a bicycle. Isn't it
> a reasonable inference that he was shooting at that person, cursing
> at that person? Is that an unreasonable inference?

After considering the matter, the trial court denied the motion to strike, stating "I think the Commonwealth has met its burden on malice because a deadly weapon was used and four shots were fired." The trial court then convicted Watson-Scott of second degree murder.

Watson-Scott appealed the matter to the Court of Appeals, arguing that the evidence was insufficient with regard to the element of malice. The Court of Appeals affirmed his conviction, reasoning that "a rational trier of fact could have found that when appellant fired a deadly weapon multiple times up St. James Street he was attempting to shoot a specific person—i.e., the man with a bike who had been walking and talking with him just a minute before." *Watson-Scott v. Commonwealth*, No. 1538-17-2 at *3 (Dec. 4, 2018).

Watson-Scott appeals.

## II. ANALYSIS

On appeal, Watson-Scott argues that the trial court and the Court of Appeals erred in finding that there was sufficient evidence of malice to support his conviction for second degree murder. Watson-Scott concedes that his actions in firing a handgun down the street were grossly negligent and culpable, but he insists that this does not sufficiently establish malice because there

3

was no evidence that his actions were intentionally committed towards his former companion. He further asserts that, in the absence of any evidence that he was firing at another individual, the doctrine of transferred intent has no application.

Although Watson-Scott's argument is primarily focused on whether the evidence is sufficient to establish that he was shooting at his former companion, the Commonwealth takes the position that our analysis need not reach that issue. It points out that, in deciding the motion to strike, the trial court ruled that malice was established by the fact that Watson-Scott intentionally fired four shots down a city street. According to the Commonwealth, if the trial court was correct in its ruling, there is no need to determine whether Watson-Scott had a specific target when he fired his handgun. In response, Watson-Scott insists that malice cannot exist in a vacuum, but must be shown by evidence of a cruel act committed *towards another*. Thus, before addressing Watson-Scott's argument regarding whether the evidence was sufficient to demonstrate that he was firing his handgun at his former companion, we must address the threshold issue of whether the legal standard for establishing malice requires proof that the defendant's actions were targeted at a particular individual or group of individuals.

"Where, as here, 'the essential facts are undisputed, we are presented only with a question of law regarding the circuit court's application of the law to those facts and therefore apply a de novo standard of review.'" *Kim v. Commonwealth*, 293 Va. 304, 311–12 (2017) (quoting *Rodriguez v. Leesburg Bus. Park, LLC*, 287 Va. 187, 193 (2014)).

At common law, malice was defined "as any evil design in general: the dictate of a wicked, depraved, and malignant heart: *un disposition a faire un male chose* [a disposition or inclination to do a bad thing]." 4 William Blackstone, Commentaries *198. Similarly, this Court has long defined malice as "the doing of a wrongful act intentionally, or without just cause

4

or excuse, or as a result of ill will." *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947). Indeed, with regard to murder, this Court has specifically explained that

> [t]he word "malice" . . . is used in a technical sense, and includes not only anger, hatred and revenge, but every unlawful and [unjustified] motive. *It is not confined to ill will to any one or more particular persons*, but is intended to denote an action flowing from any wicked and corrupt motive, done with an evil mind and purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and deliberately bent on mischief."

*Martin v. Commonwealth*, 184 Va. 1009, 1015 (1946) (emphasis added).

Additionally, "malice may be either express or implied by conduct." *Essex v. Commonwealth*, 228 Va. 273, 280 (1984). "Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.'" *Pugh v. Commonwealth*, 223 Va. 663, 668 (1982) (quoting *McWhirt v. Commonwealth*, 44 Va. 594, 604 (1846)). In contrast, malice implied by conduct, i.e., implied malice, exists where a defendant lacks the deliberate intent to kill, but the circumstances of the defendant's actions are "'so harmful that the law punishes the act as though malice did in fact exist.'" *Id.* (quoting 1 Wharton's Criminal Law & Procedure § 245 at 529 (1957)). Stated differently, implied malice encapsulates "a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice." *Essex*, 228 Va. at 288 (Poff, J., concurring). Notably, "'malice may be implied from the deliberate use of a deadly weapon.'" *Smith v. Commonwealth*, 239 Va. 243, 264 (1990) (quoting *Warlitner v. Commonwealth*, 217 Va. 348, 349 (1976)).

The concept of implied malice is based on the notion that the defendant intentionally acts, even though he knows his actions are wrong and so inherently dangerous that they could result in death. Unlike express malice, implied malice does not require that a defendant have a deliberate

5

intent to kill.  Rather, it is the fact that the defendant "wilfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm."  *Essex*, 228 Va. at 280-81.[1]

In *Pierce v. Commonwealth*, 135 Va. 635 (1923), this Court addressed a situation where an untargeted action demonstrated implied malice because the action was taken as part of a course of wrongful conduct.  *Pierce* involved a spring gun that was set by the defendant and aimed at the front door of his shop.  *Id.* at 637.  One night, a police officer checking to ensure that the shop was secure triggered the spring gun, resulting in the officer's death.  *Id.* at 638.  In addressing whether the defendant's actions amounted to manslaughter or second degree murder, the Court indicated that the dispositive factor was not the fact that a spring gun had been set. Rather, the circumstances surrounding the setting of the spring gun, specifically, the defendant's failure to warn that a spring gun had been set, were dispositive.  Thus, it was the fact that the defendant failed to warn of the danger posed by the spring gun even though he was aware that there was "a fair possibility of [the spring gun] killing innocent persons" that caused the defendant's actions to fall "within the rule which implies malice from the wanton and reckless disregard of the safety of others."  *Id.* at 651.  In other words, implied malice existed even though the defendant did not target another with his actions.

---

[1] Watson-Scott's reliance on language used by this Court and the Court of Appeals stating that implied malice requires evidence of a cruel act committed by one individual *against another* is misplaced.  While it is true that implied malice may be demonstrated by such evidence, that is hardly the only way that malice may be implied by conduct.  As this Court has recognized, "[t]he authorities are replete with definitions of malice."  *Essex*, 228 Va. at 280. Indeed, this Court has explicitly noted several different ways in which malice may be implied. *See Smith*, 239 Va. at 263 ("from the deliberate use of a deadly weapon"); *Essex*, 228 Va. at 280-81 ("willfully or purposefully . . . embark[ing] upon a course of wrongful conduct likely to cause death or great bodily harm"); *Pugh*, 223 Va. at 668 ("purposeful, cruel act . . . committed by one individual against another without any, or without great provocation").

Looking at the facts of the present case, the record clearly supports a finding that Watson-Scott engaged in an intentional "course of wrongful conduct likely to cause death or great bodily harm." *Essex*, 228 Va. at 280-81. There can be no doubt that intentionally firing multiple shots from a handgun down a city street is unlawful. *See, e.g.*, Code § 18.2-56.1 (criminalizing the reckless handling of a firearm). Further, no justification for his actions can be gleaned from the record, nor does Watson-Scott offer any justification. It is patently obvious that firing multiple shots from a handgun in the middle of a populous city is the very definition of an action flowing from a "wicked and corrupt motive, done with an evil mind and purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and deliberately bent on mischief." *Martin*, 184 Va. at 1015. Accordingly, the evidence of Watson-Scott's actions implied sufficient malice to support his conviction for second degree murder.[2]

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the Court of Appeals upholding the conviction entered by the trial court.

*Affirmed.*

---

[2] Having determined that the evidence was sufficient to support the trial court's finding that firing multiple shots down a city street established the malice element of second degree murder, we need not consider the alternative rationale adopted by the Court of Appeals, i.e., that Watson-Scott's actions were directed at his former companion. *See Commonwealth v. White*, 293 Va. 411, 419, 799 S.E.2d 494 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'"). For similar reasons, it is also unnecessary to analyze whether the concept of transferred intent has any application to the present case.

7