## Richmond

DIANNA MICKELS PUGH

v.

COMMONWEALTH OF VIRGINIA

June 18, 1982.

Record No. 810917.

Present: All the Justices.

*William O. Roberts, Jr.,* for appellant.

*Robert H. Anderson, III, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

Indicted for killing her three-year-old daughter, defendant Dianna Mickels Pugh was found guilty in a bench trial of murder of the second degree and sentenced to a term of 20 years' imprisonment. The principal issue on appeal is whether the evidence is sufficient to support a finding of malice.

On July 15, 1980, about 3:00 p.m., the victim, Mary Elizabeth Pugh, was brought by ambulance from her home in Buena Vista to a Lexington hospital. The child was dead on arrival. The cause of death was acute laryngotracheal obstruction by black pepper.

The autopsy showed she had sustained multiple abrasions and contusions "of varying ages" about her face, arms, chest, back, buttocks, and legs. Even though three years old, the child weighed merely 17 pounds and was two and one-half feet tall, having the stature of a two-year-old and the weight of an average nine-months-old infant. The child's torso "was skin and bones" with no subcutaneous fat. "It looked like the baby had been starved," testified a physician in attendance at the hospital.

According to the medical examiner's report, the child's trachea was completely occluded "by large quantities of black pepper" extending downward into both bronchial branches. The respiratory passages were also blocked by pepper. In addition, the stomach was "completely packed with large quantities of black pepper."

The record shows that the defendant, about 30 years of age with a seventh-grade education, lived separate from her husband under poor economic conditions in Buena Vista with four of her young children. During the early afternoon of the "extremely hot" day in question, defendant was at home with her mother and children when the victim "just kept fretting and crying." Defendant's mother noticed her daughter was very nervous and saw her smack the victim, observing bruises about the child's body. The mother left defendant's home about 12:30 p.m.

Shortly thereafter, the victim was still crying, "whining," and was attempting to drink from "the baby's bottle," contrary to defendant's instructions to her. According to a statement made by defendant to the police the day following the crime, the victim "got on my nerves and I just hit her." Defendant used her hands, "sometimes [her] fist" to strike the child.

Then defendant forcibly put pepper into the child's mouth, stating she "just poured it from the box in her mouth." When asked the reason for placing the pepper in the child's mouth, defendant stated to the investigator, "Well, people always told me to put soap or something like that in their mouth when they cuss . . . to keep her from doing it." Defendant told the police, "I didn't mean to kill her."

About 2:45 p.m., "a young boy" telephoned the Buena Vista police dispatcher and reported "his sister was asleep and they could not wake her up." The dispatcher, having difficulty understanding the caller, asked to talk to anyone else at the home. Then defendant came to the telephone and said, "This is Mrs. Pugh, my daughter is unconscious and I cannot wake her up." When asked whether the defendant was "frantic" during her request for help, the dispatcher testified the "request was as matter of fact as though she was telling me the time of day."

Shortly thereafter, defendant's nephew arrived at her home and found defendant giving the victim mouth-to-mouth resuscitation. Defendant was "very upset," was crying, and was saying, "Mary, please breathe." In a few minutes, the first-aid squad arrived. Efforts to revive the child were unsuccessful. The victim then was taken to the hospital and defendant remained at home.

Defendant contends on appeal the evidence was insufficient to show she was "motivated" by malice and thus the trial court erroneously convicted her of second-degree murder. Referring to the evidence, defendant notes that the day in question was "uncom-

fortably hot;" that the children were "fussy because of the heat;" that she was extremely upset; that she did not realize the quantity of pepper administered was a lethal dose; and that she used the pepper to make the child behave without the intent to cause death.

Defendant also argues that other evidence rebuts the existence of malice. She points to her efforts to revive the child, and says the attempt inadvertently packed pepper into the respiratory system rather than cleared the air passages so the child could breathe. She also notes the medical testimony by physicians who examined and treated her at Central State Hospital, where she was sent for a court-ordered examination. One physician said she was a very unhappy, depressed, and frustrated person living an impoverished existence who, in his opinion, lacked the "intent to do harm to the child." We do not agree with defendant's contentions.

When sufficiency of the evidence is attacked, the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it. Code § 8.01-680; *Evans* v. *Commonwealth*, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975). When, as here, conflicting inferences flow from the undisputed evidence, principles of appellate procedure require us to adopt those conclusions most favorable to the Commonwealth if fairly deducible from the proven facts.

In Virginia, every unlawful homicide is presumed to be murder of the second degree. When the Commonwealth proves an unlawful homicide and establishes the accused as the criminal agent, the presumption, which is no more than an inference, arises, and the defendant has the burden of going forward with some evidence to show circumstances of "justification, excuse, or alleviation." *Hodge* v. *Commonwealth*, 217 Va. 338, 341, 343, 228 S.E.2d 692, 694, 696 (1976).

Code § 18.2-32 distinguishes the degrees of murder but does not define it. Murder at common law is a homicide commited with malice, either express or implied. *Biddle* v. *Commonwealth*, 206 Va. 14, 20, 141 S.E.2d 710, 714 (1965). And whether a defendant acted with malice is generally a question to be decided by the trier of fact. *Bryan* v. *Commonwealth*, 131 Va. 709, 714, 109 S.E. 477, 478 (1921).

■ Express malice is evidenced when "one person kills another with a sedate, deliberate mind, and formed design." *M'Whirt's Case,* 44 Va. (3 Gratt.) 594, 604 (1846). Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation; "in other words, if the punishment inflicted for a slight transgression is in its nature out of all reason and beyond all proportion to the offense offered, then the inference of law is that the perpetrator was actuated by malice." *Davidson* v. *Commonwealth,* 167 Va. 451, 455, 187 S.E. 437, 439 (1936). Generally, implied malice is equivalent to "constructive malice;" that is, "malice as such does not exist but the law regards the circumstances of the act as so harmful that the law punishes the act as though malice did in fact exist." 1 *Wharton's Criminal Law and Procedure* § 245 at 529 (1957).

The circumstances of this case plainly show that the defendant committed a heinous, cruel act, with hardly any provocation. The deed was wholly unreasonable, and beyond all proportion to any ordinary response to the conduct of a recalcitrant three-year-old. The frail child, obviously suffering from malnutrition and weighing only 17 pounds, was beaten by defendant with her hands and fist. The child must have been in a weakened condition not only from lack of food but from past blows to her face, arms, chest, back, buttocks, and legs. If that was not enough, the accused, by force, poured so much pepper into the child's mouth that her windpipe and her bronchial tubes were fully blocked by the substance. Moreover, the child's stomach was "completely packed with large quantities" of the pepper. While other inferences may flow from this evidence, we hold the trial court's conclusion that implied malice was shown beyond a reasonable doubt was fairly deducible from the proven facts, and we will not disturb the finding that defendant is guilty of murder of the second degree. *See generally* Annot., 89 A.L.R.2d 396.

■ Defendant raises two other issues; neither has merit. She contends her uncounseled, post-crime statement to the police was involuntary. Before questioning defendant, the investigator fully advised her according to *Miranda* v. *Arizona,* 384 U.S. 436 (1966). The officer then conducted a balanced, compassionate interview, at the conclusion of which defendant acknowledged she had responded to the questions voluntarily. Having studied the entire statement in light of the conditions under which it was given,

we think the trial judge properly admitted into evidence through testimony of the interrogator excerpts from defendant's interview.

Defendant also argues the trial court erroneously admitted into evidence a hearsay statement made by her estranged husband in the presence of a physician at the Lexington hospital. After he determined the child's condition on the day in question, the physician went to a hospital room adjoining the emergency room and said to the parents, " 'Your child is dead,' " stating the baby had died of asphyxiation. Immediately, the father "acted very shocked," turned to the defendant, and said, " 'Oh, no, not again.' " This colloquy was admitted over defendant's objection through testimony of the physician, and properly so. The father's out-of-court declaration was admissible under the spontaneous, excited utterance exception to the hearsay rule. The statement was prompted by a startling event, announcement of the unexpected death of one's child. It was not the product of premeditation, reflection, or design, and was made under such circumstances as to preclude the presumption it was uttered as the result of deliberation. *Goins v. Commonwealth,* 218 Va. 285, 287, 237 S.E.2d 136, 138 (1977).*

For these reasons, the judgment of conviction will be

*Affirmed.*

---

* We likewise reject defendant's contention that the husband's extra-judicial statement should have been excluded as a privileged communication.