COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judge Annunziata and
        Senior Judge Hodges
Argued at Richmond, Virginia

EDWARD LORENZ, a/k/a AKITO KUNIMOTO

v.      Record No. 2483-93-2        MEMORANDUM OPINION[*] BY
                                    JUDGE WILLIAM H. HODGES
COMMONWEALTH OF VIRGINIA                 AUGUST 1, 1995

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Thomas N. Nance, Judge

        Susan D. Hansen, Deputy Public Defender (David J.
     Johnson, Public Defender, on brief), for appellant.

        Thomas C. Daniel, Assistant Attorney General (James S.
     Gilmore, III, Attorney General, on brief), for
     appellee.


     Edward Lorenz (appellant) was convicted of second degree

murder in the death of his three-year-old daughter.  On appeal,

appellant contends that the evidence was insufficient to

establish malice.  He alleges that the child's death occurred

contrary to his intentions and thus he could be convicted of no

crime higher than involuntary manslaughter.  Finding no error, we

affirm.

                              I.

     Appellant and his wife, Pamela Lorenz, had a child, Eva, on

January 25, 1986, in Eden, North Carolina.  Appellant, Pamela,

and Eva moved to Richmond in February 1989, where appellant and

Pamela worked for the Central Motel.  The family lived in a room

at the motel.  According to Pamela's testimony, appellant

complained that the child had been spoiled and did not listen to

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

orders.  Appellant also drilled his daughter in the German language and became frustrated with her when she made mistakes in pronunciation or grammar.

Appellant disciplined Eva by hitting her on the head with his shoe or the back of his hand.  When Eva wet her pants, appellant required her to wear the wet clothing all day.  Once, appellant made Eva eat her own vomit.  In early April 1989, Pamela noticed that Eva was quieter and more withdrawn than usual and appeared to have trouble walking.  The toddler complained of pain in the back of her neck.

On April 13, 1989, appellant asked Eva a question, to which she responded, "no."  Appellant angrily threw the child in the air.  She struck her head either on the wall or a piece of furniture, and fell to the floor.  Her eyes rolled up in her head and she stopped breathing.  Appellant and Pamela administered CPR.  Neither parent attempted to call for a rescue squad.  Eva began to bleed from her mouth and nose.  She did not regain consciousness and died.

Pamela bathed Eva's body, dressed her in a white dress, and wrapped her in a blanket.  Appellant said that he wanted to bury Eva in an area that was not populated so there would be little chance that the child's body would be found.  Appellant obtained an atlas of Richmond, selected a site for the grave, and marked out a route on the map.  He put Eva's body in a fruit crate and buried her behind the First Bethel Baptist Church in Henrico County.

When an acquaintance in Richmond later asked appellant about

-2-

the child, appellant stated that she was with a babysitter or family friend. Appellant told Pamela to write to the Bureau of Vital Statistics in North Carolina to try to get a death certificate stating that Eva died in Greensboro, North Carolina. He directed Pamela to tell people who asked that Eva had died there. When appellant and Pamela moved to France, appellant told his aunt that Eva had passed away from an illness.

On January 3, 1990, hunters discovered the child's skull, visible above ground, near the First Bethel Baptist Church. Dr. Marcella Fierro, the medical examiner, determined the cause of death to be "a brain injury" and that the child suffered multiple skull fractures. Fierro testified at trial that at least one linear fracture to the back of the child's head had been received prior to death.

Detective Gregory Auditore first spoke to appellant on May 9, 1993, in Los Angeles, California. In that interview, appellant said that Eva had not suffered any injury prior to her death. He said that Eva had been sitting on the floor eating a sandwich and watching television; when she stood up, she had trouble breathing, and fell to the carpet. Appellant said his efforts to resuscitate her failed. He denied being angry with her or throwing her.

The following day, Auditore escorted appellant on the airplane back to Virginia. En route, appellant told Auditore that he had a plan which would not require Pamela to come to court. When Auditore asked appellant if he planned to tell the truth, appellant answered that he did. While waiting to change

planes in the Dallas airport, Auditore asked appellant if he killed Eva and appellant said he did. He said that Eva hit her head on the wall. When Auditore asked if it was a "slam" against the wall, appellant answered in the affirmative. At that point in the interview, appellant stated that he needed an interpreter who spoke German before he could explain further what had happened.

On May 11, 1993, in Henrico County, appellant told investigators that Eva had collapsed after she could not get any air. He stated that approximately one week before Eva's death he had shoved her into a wall, but there had been no outward sign of injury. When asked if he killed Eva, appellant said "no." Subsequently, however, appellant said he threw Eva into the wall the same day that she had difficulty breathing and passed out. He admitted that he threw her into the wall because he was angry, and accepted responsibility for her death.

At his bench trial, appellant testified that Eva had been eating a sandwich, started to say something, stopped breathing, and never started breathing again. He said that he only tossed her in the air in a playful way. Appellant testified that on the day Eva died, he did not strike her or throw her into the air.

## II.

Appellant contends that the evidence did not establish malice on his part, but "only gross and culpable negligence in that Eva was killed contrary to [his] intent."

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom."  <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  Furthermore, the fact finder must determine the weight to be given evidence and whether a witness' testimony is credible.  <u>Bridgeman v. Commonwealth</u>, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

"Murder at common law is a homicide committed with malice, either express or implied."  <u>Pugh v. Commonwealth</u>, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982).  The question of whether a defendant acted with malice is to be determined by the fact finder.  <u>Id.</u>  See <u>Branch v. Commonwealth</u>, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).

"Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.'  Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation . . . ."  <u>Pugh</u>, 223 Va. at 668, 292 S.E.2d at 341 (quoting <u>M'Whirt's Case</u>, 44 Va. (3 Gratt.) 594, 604 (1846)).  <u>See</u> <u>Price v. Commonwealth</u>, 18 Va. App. 760, 767, 446 S.E.2d 642, 646 (1994).

Malice is unnecessary to prove the crime of manslaughter, but is the "touchstone by which murder and manslaughter cases are distinguished."  <u>Essex v. Commonwealth</u>, 228 Va. 273, 280, 322 S.E.2d 216, 219-20 (1984).  To establish the crime of second-degree murder, "the defendant must be shown to have wilfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm."  <u>Id.</u> at 280-81, 322 S.E.2d at 220.

The evidence established that appellant acted with malice when he caused the injuries which killed his daughter. Appellant inflicted harsh physical punishment on the three-year-old in the weeks prior to her death. At the time of the offense, appellant was angry with the child, and punished her by throwing her into the air, away from his reach. She fell to the hard motel room floor. While falling, she hit her head, either on the wall or furniture, and sustained a fatal injury to her head.

Appellant's actions after the child died further support the trier of fact's finding of malice. Appellant told Pamela he wanted to bury the child in a sparsely populated location to lessen the chances that anyone would find the child's body. He told Pamela to attempt to obtain a fraudulent death certificate which would state that Eva died in North Carolina. In Richmond, when asked about the child's whereabouts, appellant lied and said that she was with a babysitter or family friend. In France, he lied to his aunt and said that Eva had died from an illness.

Furthermore, the court, as fact finder, could consider appellant's ever-changing stories to law enforcement authorities about Eva's death as evidence that he was "attempting to conceal his guilt by making inconsistent explanations." Iglesias v. Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170, 179-80 (1988) (en banc).

The trier of fact was not required to accept appellant's trial testimony that Eva simply had fallen on the floor. See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988). The court was entitled to conclude that appellant

-6-

lied and to infer that he testified untruthfully in order to hide his guilt. See Daung Sam v. Commonwealth, 13 Va. App. 312, 320, 411 S.E.2d 832, 837 (1991). The court rejected appellant's testimony and expressly accepted Pamela's account of the events.

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support a finding that Eva's death was the result of appellant's deliberate and cruel act. Thus, the judgment of the trial court is affirmed.

Affirmed.