COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Kelsey and McClanahan
Argued by teleconference


CYNTHIA LYNN WELCH

MEMORANDUM OPINION* BY
v.        Record No. 3152-03-4            JUDGE D. ARTHUR KELSEY
                                                  OCTOBER 18, 2005

COMMONWEALTH OF VIRGINIA


UPON REHEARING

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
James W. Haley, Jr., Judge

Timothy W. Barbrow (Law Offices of Timothy Barbrow, on brief),
for appellant.

Kathleen B. Martin, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


We issued a memorandum opinion in this case on July 12, 2005, affirming in part and

reversing in part the first-degree murder conviction of Cynthia Lynn Welch. Welch v.

Commonwealth, No. 3152-03-4, slip op. at 15 (July 12, 2005). In that opinion, we held that the

trial court did not err in denying Welch's request for an expert. Id. We also concluded the

evidence proved malice sufficient for second-degree murder, but not premeditation sufficient for

first-degree murder. Id.

Pursuant to Rule 5A:33(A), Welch requested that we reconsider our holding that the

evidence proved malice. The Commonwealth also requested a rehearing, asking that we

reconsider our holding that the evidence did not prove premeditation. This holding, the

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth argued, mistakenly assumed that premeditation was required under Code

§ 18.2-32. In response, we stayed our mandate, ordered rebriefing, and reheard oral arguments.[1]

Having reconsidered all aspects of our earlier decision, we now reaffirm our holding that the trial court did not err in denying Welch's request for an expert for the reasons set forth in our earlier opinion. Welch, *supra*, slip op. at 2-4 (discussed in § I(A)). We likewise reaffirm our holding that the evidence proved malice and adopt the rationale of our earlier opinion on this ground as well. Id., slip op. at 6-13 (discussed in § I(B)(1)). On the issue of premeditation, however, we agree with the Commonwealth that Code § 18.2-32 does not require proof of premeditation for first-degree murder by starvation. We thus vacate that portion of our earlier opinion. Id., slip op. at 13-15 (§ I(B)(2)).

All murders require malice, but not all first-degree murders require premeditation. Code § 18.2-32 provides that murder

> by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, punishable as a Class 2 felony.

Using disjunctive clauses, the literal text of Code § 18.2-32 separates first-degree murder into

> three vastly dissimilar groupings of types of murder: those usually called 'enumerated' crimes (murder by poison, by lying in wait, imprisonment or starvation); those committed as a result of willful, deliberate premeditation; and those murders committed in the commission of or attempt to commit specified felonies of violence.

---

[1] We did not, however, withdraw our prior opinion or order that it be vacated. Our practice upon panel reconsideration of a memorandum opinion is to leave the original opinion in place and to address on rehearing only those aspects of the opinion that we later conclude were in error. See, e.g., Carter v. Commonwealth, 31 Va. App. 393, 523 S.E.2d 544 (2000); Wellmore Coal Co. v. Williamson, No. 1175-97-3, 1998 Va. App. LEXIS 10 (Jan. 13, 1998), reinstated in part following reconsideration, Petition for Rehearing Order (May 19, 1998); Watts v. Watts, No. 2426-93-2, 1995 Va. App. LEXIS 957 (March 8, 1995) (adopting in part and vacating in part prior memorandum opinion).

John L. Costello, Virginia Criminal Law & Procedure § 3.4, at 46 (3d ed. 2002). It is a prerogative of the legislature to "define categories and ranges of appropriate punishment" — just as it did "when it made deaths resulting from enumerated dangerous acts such as imprisonment and starvation first degree murder in Va. Code § 18.2-32." Id. § 3.4-1, at 49-50.

These separate classes within the first-degree murder statute appeared in the earliest versions of the statute. Interpreting the predecessor statute to Code § 18.2-32, Howell v. Commonwealth, 67 Va. (26 Gratt.) 995, 997 (1875), explained that a malicious killing using any of the enumerated methods ("poison, lying in wait, imprisonment or starving") would be

> murder in the first degree, whether there was any actual intent to kill or not. In other words, although the presence of an actual intention to kill would often exist in such a case, it would not necessarily constitute an ingredient of the offence, as it would be no part of its definition.

See also Souther v. Commonwealth, 48 Va. (7 Gratt.) 673, 680-81 (1851). Another early Virginia case explained it this way:

> In all these enumerated cases, the legislature has declared the law, that the perpetrator shall be held guilty of murder in the first degree, without further proof that the death was the ultimate result, which the will, deliberation and premeditation of the party accused sought.

Commonwealth v. Jones, 28 Va. (1 Leigh) 598, 611 (1829); see Whiteford v. Commonwealth, 27 Va. (6 Rand.) 721, 723 (1828); see generally Gilreath v. Robinson, 544 F. Supp. 569, 575 (E.D. Va. 1982), aff'd on other grounds, 705 F.2d 109 (4th Cir. 1983); Roger D. Groot, Criminal Offenses & Defenses in Virginia 432-34 (2005).[2]

---

[2] For examples of analogous first-degree murder statutes, similarly interpreted, see State v. Evangelista, 353 S.E.2d 375, 380 (N.C. 1987) (observing that "murder perpetrated by means of starvation" is "specifically declared to be first degree murder" and thus it is unnecessary "that the State prove a specific intent to kill"); State v. Harper, 365 S.E.2d 69, 72 (W. Va. 1987) (confirming that the statutory language "'murder by poison, lying in wait, imprisonment, starving,' does not require that premeditation or a specific intent to kill has to be shown"); see also United States v. Shaw, 701 F.2d 367, 393 n.20 (5th Cir. 1987) (interpreting a conviction for

Under Virginia law, therefore, a murder by one of the methods enumerated in Code § 18.2-32 constitutes murder in the first degree. That so, the act of "starving" someone to death makes one "guilty of murder in the first degree, *without further proof* that *the death* was the ultimate result, which the will, deliberation and premeditation of the party accused sought." James M. Matthews, <u>Virginia Criminal Laws</u> 155-56 n.2 (2d ed. 1878) (emphasis in original) (paraphrasing <u>Jones</u>, 28 Va. (1 Leigh) at 611).

Because the evidence in this case proved a murder by starvation, we affirm Welch's conviction for murder in the first degree under Code § 18.2-32.

<u>Affirmed.</u>

---

first-degree murder under 18 U.S.C. § 1111 to require proof of a killing with "malice aforethought" and the "additional proof of premeditation, poisoning, *or* lying in wait" (emphasis added)); <u>People v. Merkouris</u>, 297 P.2d 999, 1012 (Cal. 1956) (noting that "if the killing was committed by lying in wait, it was murder of the first degree by force of the statute and the question of premeditation was not further involved").

Elder, J., concurring, in part, and dissenting, in part.

I concur in the majority's conclusion that the trial court's denial of appellant's request for appointment of a second medical expert was not error. However, I would hold the evidence, viewed in the light most favorable to the Commonwealth, failed to support a finding that appellant acted with malice rather than merely with criminal negligence. Thus, I would reverse the conviction for first-degree murder and remand for retrial for an offense no greater than involuntary manslaughter without reaching the issue of premeditation.

Any element of a crime may be proved by circumstantial evidence, e.g., Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), provided the evidence as a whole "is sufficiently convincing to exclude every reasonable hypothesis except that of guilt," Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

Code § 18.2-32 provides that "[m]urder . . . by . . . starving, or by any willful, deliberate, and premeditated killing . . . is murder of the first degree . . . ." Malice, an essential element of all grades of murder, "is the touchstone by which murder and manslaughter cases are distinguished." Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 219-20 (1984).

Malice may be either express or implied by conduct. Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982). "Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.' Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation . . . ." Id. (quoting M'Whirt's Case, 44 Va. (3 Gratt.) 594, 604 (1846)). Implied malice may be inferred from "conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken." Essex, 228 Va. at 281, 322 S.E.2d at 220.

"[W]hether a defendant acted with malice is generally a question to be decided by the trier of fact." Pugh, 223 Va. at 667, 292 S.E.2d at 341. "In making the determination whether

malice exists, the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death or great bodily harm, and whether it was volitional or inadvertent . . . ." Essex, 228 Va. at 282, 322 S.E.2d at 221.  If

> a killing results from negligence, however gross or culpable, and the killing is contrary to the defendant's intention, malice cannot be implied.  In order to elevate the crime to . . . murder, the defendant must be shown to have wilfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm.

Id. at 280-81, 322 S.E.2d at 220.  "[I]f death is the direct consequence of the malicious omission of the performance of a duty, such as of a mother to feed her child, this is a case of murder; but if the omission is not willful, and arose out of neglect only, it is manslaughter." Biddle v. Commonwealth, 206 Va. 14, 20, 141 S.E.2d 710, 714 (1965).

In Biddle, relied upon by appellant, the Supreme Court reversed a conviction for first-degree murder in a case involving failure to feed an infant. Id. at 21, 141 S.E.2d at 715. The defendant in Biddle, a twenty-five-year-old mother of six, told police her husband frequently claimed none of the children was his. Id. at 15-16, 141 S.E.2d at 711-12.  She said that she did not feed the infant when she and her husband were not getting along and that "during the period of approximately a month prior to the baby's death, several days elapsed between feedings." Id. at 16, 141 S.E.2d at 712.  She said that, because her husband claimed none of the children was his, "she 'figured' he wouldn't care if the baby died," thereby acknowledging an awareness that failure to feed the infant regularly could result in the infant's death. Id.  On the infant's death at approximately three months of age, it weighed less than it had at birth, it was dehydrated, and its intestinal tract and stomach were entirely empty. Id. at 19, 141 S.E.2d at 714.  The defendant admitted she knew the baby had lost weight and that she had not taken the baby to a doctor. Id. The Court held that the evidence showed the defendant "neglected the baby and was careless and indifferent in the performance of her duties not only to the baby, but to other members of her

family as well," and that the evidence failed to "prove[] beyond a reasonable doubt that [the] defendant willfully or maliciously withheld food and liquids from the baby." Id. at 21, 141 S.E.2d at 715. As a result, it reversed her conviction for first-degree murder. Id.

Biddle establishes that a parent's failure to feed an infant regularly, even with knowledge that this failure might cause death, may result from neglect rather than willfulness. Id. Further, the evidence in appellant's case, viewed in the light most favorable to the Commonwealth, fails to prove beyond a reasonable doubt anything more than the general knowledge and neglect apparent in Biddle. Although the evidence established that Terrance's physician and babysitter expressed concern to appellant about Terrance's health and the rate at which Terrance had been gaining weight, the evidence established that when Terrance died at approximately three months of age, he weighed over one-and-one-half pounds more than the seven pounds ten ounces he weighed at birth. The infant in Biddle, by contrast, who was also three months old at the time of its death, actually weighed one pound less at the time of death than it had weighed at birth. Id. at 19, 141 S.E.2d at 714. Appellant admitted to her cellmate that because she and Terrance's father, Gibson, "were just always high" and "didn't want to deal with [the baby]," Terrance would "sometimes" "go" "a couple of days" without being fed. This behavior, although legally neglectful and morally reprehensible, comes no closer to establishing malice than did Biddle's admission that "during the period of a month prior to [her] baby's death, several days elapsed between feedings" and that she knew failing to feed her infant regularly could result in death. Although appellant admitted to her cellmate that she and Gibson planned to explain the absence of food in Terrance's digestive tract by saying it resulted from an inherited disorder related to Gibson's, no evidence established that appellant and Gibson had formulated this plan *before* Terrance's death.

- 7 -

I would conclude that, however neglectful appellant's behavior, "the Commonwealth has not proved beyond a reasonable doubt that [appellant] willfully or maliciously withheld food and liquids from the baby." Id. Thus, I would hold the evidence fails to establish that appellant acted with malice rather than with gross negligence, and I would reverse her conviction for murder and remand for retrial on a charge no greater than involuntary manslaughter. Because I believe the holding in Biddle compels the conclusion that the evidence failed to prove malice, I would not consider the Commonwealth's argument that, under Code § 18.2-32, a conviction for first-degree murder based on an act of murder by starvation does not require separate proof of premeditation.

For these reasons, I concur in the majority's holding that appellant's request for appointment of a second medical expert was not error. However, because I believe the evidence was insufficient to prove appellant acted with malice, I dissent from the majority's decision to affirm the conviction for first-degree murder.