PRESENT: All Justices

MICHAEL JEFFREY OSMAN

OPINION BY
v.   Record No. 120291        JUSTICE DONALD W. LEMONS
February 28, 2013

LOUIS MOSS OSMAN, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

In this appeal, we consider whether the Circuit Court of

the City of Virginia Beach ("circuit court") erred in

determining that Michael Jeffrey Osman ("Osman") was a "slayer"

under Code § 55-401.[1]

I. Facts and Proceedings

Louis Moss Osman and Wanda M. Austin ("Executors"), co-

executors of the estate of Carolyn Goldman Osman, and co-

trustees of the Carolyn Goldman Osman Revocable Trust, Osman

Family Trust and Goldman Family Trust fbo Carolyn Goldman Osman,

filed a complaint and request for declaratory judgment in the

circuit court, asking the court to declare that Osman was a

"slayer" under Code § 55-401.  Code § 55-401 defines a slayer

as:

_____

[1] Effective October 1, 2012, Code §§ 55-401 through -415
(Chapter 22 of Title 55, entitled "Acts Barring Property
Rights") were repealed and replaced by Code §§ 64.2-2500 through
-2511 (Chapter 25 of Title 64.2).  Acts 2012 ch. 614.  We will
refer to the code sections in effect during the trial, as those
are the ones referenced by the circuit court and the parties in
their briefs on appeal.

[A]ny person (i) who is convicted of the murder or voluntary manslaughter of the decedent or, (ii) in the absence of such conviction, who is determined, whether before or after his death, by a court of appropriate jurisdiction by a preponderance of the evidence to have committed one of the offenses listed in subdivision (i) resulting in the death of the decedent.

Code § 55-414(A) states that:

This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this Commonwealth that no person shall be allowed to profit by his own wrong, wherever committed. In furtherance of this policy, the provisions of this chapter are not intended to be exclusive and all common law rights and remedies that prevent one who has participated in the willful and unlawful killing of another from profiting by his wrong shall continue to exist in the Commonwealth.

The facts in this case are not in dispute. Carolyn Goldman Osman ("Carolyn") had three sons, Bradley Alan Osman, Louis Moss Osman, and Osman, all of whom were the beneficiaries of Carolyn's estate and various trusts. On December 7, 2009, Carolyn died as a result of Osman's actions. Her cause of death was strangulation and blunt force trauma to the head. Osman was charged with first-degree murder, but pled not guilty by reason of insanity.

Osman signed a stipulation of the Commonwealth's evidence, admitting that the Commonwealth would have established that on the morning of December 7, 2009, Carolyn came to Osman's house to drive him to traffic court. Osman strangled Carolyn and

2

struck her head against the ground until she died.  He fled the scene in Carolyn's car.  A police officer stopped him shortly thereafter, and Osman admitted that he had killed his mother.

Osman has a very long history of mental illness, and had been previously diagnosed with paranoid schizophrenia.  He had become severely delusional and thought everyone, including his mother, meant to harm him.  The Commonwealth agreed that Osman was insane at the time he killed his mother, and the trial court found him not guilty by reason of insanity.

Subsequently, the circuit court held a hearing on the complaint and request for declaratory judgment at issue in this case.  The parties agreed there were no material issues in dispute, and that the only issue before the court was whether Osman could inherit his portion of his mother's estate.  The Executors argued that Osman was responsible for his mother's death, and that it would violate public policy to allow him to inherit a portion of her estate.  Osman argued that the slayer statute only prevents someone from benefitting from an intentional wrongful act, and because he was insane at the time of the killing, he did not intend to kill her.  The circuit court agreed that there was no case on point, but found that the strong public policy of the Commonwealth was that a person should not profit from their wrong which results in the death of another.  The circuit court determined that although Osman was

3

found not guilty by reason of insanity, Osman was a slayer under Code § 55-401 and could not share in the proceeds from his mother's estate.

Osman filed a petition for appeal with this Court, and we awarded him an appeal on the following assignments of error:

1.  The court erred in determining that the defendant was a "slayer" as defined under Section 55-401 Code of Virginia 1950, as amended, as the Defendant was adjudged not guilty by reason of insanity in the killing of Carolyn Osman.

2.  That the court erred in determining that the strong public policy of Virginia as codified in Section 55-414(A) Code of Virginia 1950, as amended, as applied to this case supports the determination that the defendant Michael Jeffrey Osman should be determined to be a slayer under Section 55-401 of the Code of Virginia 1950, as amended, as a person adjudged to be insane does not know they are profiting nor that the killing which they committed is wrong.

## II. Analysis

### A. Standard of Review

Well-settled principles of statutory review guide our analysis in this case.

> [A]n issue of statutory interpretation is a pure question of law which we review de novo. When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

4

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted).

## B. Code §§ 55-401 and 55-414

Under Code § 55-401, there are two ways a person may be declared a slayer. The first is when a person is convicted of murder or voluntary manslaughter of the decedent. This portion of the statute does not apply to Osman because he was found not guilty by reason of insanity. In the absence of a conviction for murder or voluntary manslaughter, the statute provides that a slayer shall mean any person "who is determined, whether before or after his death, by a court of appropriate jurisdiction by a preponderance of the evidence to have committed one of the offenses listed in subdivision (i) resulting in the death of the decedent."

We have held:

> An accused cannot be convicted of a crime unless the Commonwealth meets its burden of proof. An essential element of the due process guaranteed by the Fourteenth Amendment is that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact <u>beyond a reasonable doubt of the existence of every element of the offense</u>.

Hubbard v. Commonwealth, 276 Va. 292, 295, 661 S.E.2d 464, 466 (2008) (internal citations and punctuation omitted) (emphasis added). Code § 55-401(1)(ii) provides that a person can be determined to be a slayer if a court determines, by a

5

preponderance of evidence, that the person committed the "offense" of murder or voluntary manslaughter. Of course, proof of criminal "offenses" requires an evidentiary standard of "beyond a reasonable doubt." Read literally, the statute is internally inconsistent.

In resolving this issue of statutory construction we are aided by Code § 55-414, entitled "Construction." This section states that this chapter "shall be construed broadly in order to effect the policy of this Commonwealth that no person shall be allowed to profit by his wrong, wherever committed." Code § 55-414(A). This statute further states that the purpose of this chapter is to "prevent one who has participated in the willful and unlawful killing of another from profiting by his wrong . . . ." Id. Giving effect to legislative intention, we have no difficulty interpreting Code § 55-401(ii) as requiring proof by preponderance of the evidence of the remaining elements of either murder or voluntary manslaughter.

Preponderance of evidence is the burden of proof used in most civil actions. See Wyatt v. McDermott, 283 Va. 685, 700, 725 S.E.2d 555, 563 (2012). In this civil action to declare Osman a slayer, we must review the sufficiency of the evidence

to determine if the elements of murder are proved by a preponderance of the evidence.[2]

Murder is the unlawful killing of another with malice. Wood v. Commonwealth, 140 Va. 491, 494, 124 S.E. 458, 459 (1924). Malice, in a legal sense, means any wrongful act done willfully or purposely. See Avent v. Commonwealth, 279 Va. 175, 202, 688 S.E.2d 244, 259 (2010). In Virginia, all murder other than capital murder and murder in the first degree is murder of the second degree. Code § 18.2-32. To be found guilty of murder, a person must have acted maliciously; in other words, he must possess the necessary mens rea. Mens rea is defined as "criminal intent." Black's Law Dictionary 1075 (9th ed. 2009). It is often referred to as "guilty mind." Id.

However, in considering whether Osman is a slayer under Code § 55-401, we do not consider criminal intent ("mens rea"), we consider civil intent. Intent in a civil context only requires that a person intended his actions; there is no requirement that the person have knowledge that his actions were wrongful. When discussing intent and the differences between the term "willful" in a criminal context versus a civil one, the United States Supreme Court explained:

---

[2] Osman was charged with murder, not voluntary manslaughter. There is no contention that he was guilty of voluntary manslaughter or that the elements of voluntary manslaughter were proven. Accordingly, we limit our analysis to the elements of murder.

7

> [W]e have consistently held that a defendant cannot harbor such criminal intent unless he acted with knowledge that his conduct was unlawful. Civil use of the term [willful], however, typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing.

_Safeco Ins. Co. v. Burr_, 551 U.S. 47, 57-58 n.9 (2007)(internal quotation marks and citation omitted).

In _Johnson v. Insurance Co. of North America_, 232 Va. 340, 350 S.E.2d 616 (1986), we examined this distinction. In _Johnson_, we held that an intentional injury exclusion clause in a homeowners policy precluded coverage for an insured who, while mentally ill, shot and injured a friend. _Id._ at 348, 350 S.E.2d at 621. The insured had avoided criminal liability because he was found not guilty by reason of insanity. _Id._ at 344, 350 S.E.2d at 618. However, in a subsequent action for personal injury we held that the insured's actions were intentional. He was excused from criminal sanctions because he did not know that his actions were wrongful. Nonetheless, he intended his actions; and, in a civil action for personal injury, the intentional injury exclusion clause applied. _Id._ at 348, 350 S.E.2d at 621.

Significantly, in _Johnson_ we noted,

> . . . an individual may be excused from penalty if he is insane at the time he commits a criminal act. . . . [H]e may do the act with every intention of consummating it, but when it is shown that he was mentally ill, he is excused

8

from the imposition of the usual sanctions. "The absence of punishment, however, does not retrospectively expunge the original intention."

Id. (citing Colonial Life & Accident Ins. Co. v. Wagner, 380 S.W.2d 224, 226 (Ky. 1964)); see also Eastlack v. Commonwealth, 282 Va. 120, 124, 710 S.E.2d 723, 725 (2011).

In this case, the stipulated evidence presented at Osman's trial for murder clearly demonstrated that Osman intended to kill his mother. He repeatedly struck her head against the ground while strangling her. As in Johnson, Osman avoided criminal sanctions because, due to his mental illness, he did not understand his actions were wrongful. Nonetheless, he did intend his actions, and we hold that, under the civil burden of proof of preponderance of the evidence, the evidence is sufficient to prove the elements of murder. This holding is consistent with the direction found in Code § 55-414 that we must interpret Code § 55-401 to effect the policy of this Commonwealth that no person should be allowed to profit from his wrong.

In Avent v. Commonwealth, we stated that " '[k]illing in self-defense may be either justifiable or excusable homicide. Justifiable homicide in self-defense occurs [when] a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death

9

or great bodily harm to himself.' " 279 Va. at 199, 688 S.E.2d at 257 (quoting Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977)). Excusable homicide in self-defense occurs when the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm. Yarborough, 217 Va. at 975, 234 S.E.2d at 290.

It is instructive to point out that a person who has committed a justifiable homicide is not a person who has committed a "wrong," as anticipated by Code § 55-414. A person who committed an excusable homicide, however, may have committed a wrong in the initial provocation. The issue whether a person who kills in self-defense is a slayer is a question left for another day.

### III. Conclusion

We hold that the circuit court did not err in holding that Osman is a slayer under Code § 55-401, and that as a result he cannot inherit his share of his mother's estate. Accordingly, we will affirm the judgment of the circuit court.

Affirmed.


JUSTICE McCLANAHAN, concurring.

I agree with the majority that Osman committed murder under Code § 55-401 (the "slayer statute"), barring him from sharing in his mother's estate.  I disagree, however, with the majority's rationale in reaching that conclusion.  The majority holds that proof of the mens rea element of murder, i.e., malice, is not required under clause (ii) of the definition of "[s]layer" in Code § 55-401 because the statute incorporates a civil preponderance of the evidence standard for proving the commission of murder.  In doing so, the majority substitutes malice with its own notion of "civil intent" as an element of murder.  This construction of the slayer statute then provides the majority the means for concluding that Osman was a slayer as a result of killing his mother, despite the fact that he was adjudged legally insane at that time.  I read the slayer statute differently.

Code § 55-401 plainly provides that, absent a conviction of the defendant for murder or voluntary manslaughter, the plaintiff must prove that the defendant nevertheless "committed one of [those] offenses" under clause (ii) of the statute's definition of murder.[1]  Under Virginia law, proof of murder

---

[1] There is no basis for this Court to conclude that Osman committed voluntary manslaughter as opposed to murder because there is no evidence that Osman's mother did anything to reasonably provoke him into attacking and killing her.  See Jenkins v. Commonwealth, 244 Va. 445, 457, 423 S.E.2d 360, 368

11

requires a showing of malice.  Rhodes v. Commonwealth, 238 Va. 480, 485, 384 S.E.2d 95, 98 (1989) ("Malice [is] an essential element of all grades of murder . . . ." (citing Moxley v. Commonwealth, 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953))); Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981) (" 'Malice aforethought is the grand criterion which distinguishes murder from other killings.' " (quoting M'Whirt's Case, 44 Va. (3 Gratt.) 594, 605 (1846))).  There is nothing in the language of Code § 55-401 indicating that it dispenses with the requirement of proving malice for one seeking to establish that an alleged slayer, though not "convicted" of murder, nevertheless "committed" murder.  The statute simply reduces the burden for such proof from the beyond a reasonable doubt standard for criminal conviction to the civil preponderance of the evidence standard.  Here, however, Osman's successful insanity defense established the basis for an exception to the requirement of proving malice as an element of murder: Osman's insanity negated consideration of whether he possessed malice at the time he killed his mother.[2]

---

(1992) (voluntary manslaughter, a common law crime in Virginia requires that "'the killing must have been done in the heat of passion and upon reasonable provocation'" (quoting Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986))).

[2] I agree with Justice Powell's assessment in her concurrence that the majority's construction of Code § 55-401 is internally inconsistent and has the unintended consequence of rendering one a slayer under the statute for intentionally

12

A finding of not guilty by reason of insanity under

Virginia law is predicated upon findings that (a) the defendant

---

killing another in self-defense.  However, I disagree that this Court should hold that Osman possessed the mens rea for murder even though he was found not guilty of that offense by reason of his insanity.

As we recently explained in Eastlack v. Commonwealth, 282 Va. 120, 124, 710 S.E.2d 723, 725 (2011), mens rea and insanity are incompatible.  Indeed, malice, as the mens rea for murder, is premised on the fact that the "mind of the actor" must have been under the "control of reason" at the time of the offense - the antithesis of insanity.  Thomas v. Commonwealth, 279 Va. 131, 161, 688 S.E.2d 220, 236 (2010).  See Davis v. United States, 160 U.S. 469, 485 (1895) ("One who takes human life cannot be said to be actuated by malice aforethought . . . unless at the time he had sufficient mind to comprehend the criminality or the right and wrong of such an act.").

I believe reliance on Johnson v. Insurance Co. of N. Am., 232 Va. 340, 350 S.E.2d 616, (1986), and Clark v. Arizona, 548 U.S. 735 (2006) for their asserted propositions is misplaced. Johnson was limited to the application of a homeowners insurance policy excluding coverage for intentional bodily injury caused by the insured.  Johnson, 232 Va. at 344, 350 S.E.2d at 618. This Court held that the insured's intentional acts to injure the plaintiff were excluded from coverage even though the insured was legally insane at the time the injury was inflicted. Id. at 347-48, 350 S.E.2d at 620-21.  The Court did not indicate in Johnson, however, that malice could be equated with the intentional acts of the insured; indeed, we did not address at all in Johnson the subject of either malice or murder.

As to Clark, the United Sates Supreme Court held in that case that due process was not violated by Arizona law allowing "mental-disease and capacity evidence [to] be considered only for its bearing on the insanity defense."  Clark, 548 U.S. at 770.  In that regard, Arizona law is like Virginia law.  As this Court explained in Stamper v. Commonwealth, 228 Va. 707, 717, 324 S.E.2d 682, 688 (1985), "evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt." Accordingly, mental-disease and capacity evidence is not permitted to rebut mens rea apart from the affirmative defense of insanity under Virginia law as well as Arizona law.  But where such evidence does establish legal insanity, as recognized in Clark, "insanity trump[s] mens rea."  Clark, 548 U.S. at 768 n.38.

"committed" the criminal offense charged, but (b) he was insane at the time of its commission. Code § 19.2-182.2 provides in relevant part that, "[w]hen the defense is insanity of the defendant at the time the offense was committed, the jurors shall be instructed, if they acquit him on that ground, to state the fact with their verdict." (Emphasis added.) Indeed, absent a finding that the defendant committed the offense, his insanity defense would be irrelevant to the consideration of guilt; and he would be entitled to a finding of not guilty.

Based on the requirements of Code § 19.2-182.2, the Virginia Criminal Model Jury Instruction addressing the insanity defense thus states: "If you find from the greater weight of the evidence that at the time of the crime the defendant was insane, then you must find him not guilty by reason of insanity even though you find that he committed the crime." 2 Virginia Model Jury Instructions - Criminal, No. 53.150, at 53-7 (repl. ed. 2011) (emphasis added). This means, as we recently explained in Eastlack v. Commonwealth, 282 Va. 120, 124, 710 S.E.2d 723, 725 (2011), that "[a] person who has been found 'not guilty by reason of insanity' of a criminal charge has not been acquitted in the sense that he has been determined to be innocent of the commission of the criminal act charged. Rather, he has been excused from criminal responsibility for the act because his

14

mental condition at the time of the offense crossed the borderline of legal insanity . . . ."

A finding of not guilty by reason of insanity, in turn, triggers the requirement under Code § 19.2-182.2 that the defendant shall be civilly committed at least temporarily, which can then lead to an indeterminate period of involuntary civil commitment. See id. at 124-25, 710 S.E.2d at 725 (discussing the civil commitment process). Consequently, "a person found not guilty by reason of insanity is not discharged from the constraints imposed upon him by law as a result of his criminal act. He is not free to resume his life in the community as he would be if he had been acquitted in the usual sense." Id. at 124, 710 S.E.2d at 725.

As to the mens rea element of a crime relative to the insanity defense, under Virginia law the finding of insanity necessarily supersedes any specific consideration of that element by the factfinder. In other words, evidence showing insanity trumps mens rea. See id. at 124, 710 S.E.2d at 725 (finding the defendant legally insane "preclud[es] a finding that he possessed the mens rea requisite for conviction"); see also Clark v. Arizona, 548 U.S. 735, 768 n.38 (2006); cf. Stamper v. Commonwealth, 228 Va. 707, 717, 324 S.E.2d 682, 688 (1985) (evidence of criminal defendant's mental state is relevant only to insanity defense). Accordingly, the finding

15

that the defendant committed the criminal act (i.e., the actus reus), along with the finding that he was insane at the time of its commission, ends the inquiry.  The defendant is nevertheless held accountable for his criminal act; his successful insanity defense excuses him from criminal punishment but subjects him to the constraints of involuntary civil commitment.

In this case, the estate representatives established, based on the undisputed evidence under a preponderance standard, that Osman committed the act of murdering his mother when he, without justification, caused her death by strangling her and beating her head against the ground.  The additional undisputed evidence that Osman was insane at that time, and thus found not guilty by reason of insanity on the charge of first degree murder, did not render him "innocent of the commission of [that] criminal act." Eastlack, 282 Va. at 124, 710 S.E.2d at 725.  Even though his successful insanity defense excused him from criminal punishment, because of his wrongful actions, he was deprived of his freedom indeterminately through involuntary civil commitment.

Construing Code § 55-401 "broadly," as Code § 55-414 mandates to effectuate the Commonwealth's policy of disallowing one to "profit by his own wrong," I would hold that conduct such as that shown here amounting to the actus reus of murder, committed by one found not guilty by reason of insanity,

16

constitutes the commission of murder as contemplated by clause (ii) of the definition of "[s]layer" in Code § 64.2-2500.  The trial court was therefore correct in ruling that the estate representatives proved that Osman was a "slayer" under this civil statute, barring him from sharing in his mother's estate.

JUSTICE POWELL, concurring.

I agree with the majority that the estate representatives proved that Osman was a "slayer" as contemplated by Code § 55-401.[1]  In affirming the trial court, however, the majority eliminates the mens rea element and replaces it with civil intent.  I write separately because I believe that the majority's analysis results in an internal inconsistency in the definition of "slayer" under Code § 55-401.  Furthermore, I believe that the majority's interpretation expands the definition of "slayer" to apply to individuals that the General Assembly clearly did not intend.

Under Code § 55-401, there are two conditions under which a person can be found to be a slayer: 1) the person is "convicted of the murder or voluntary manslaughter of the decedent" (Code

---

[1] For the sake of clarity, I will also refer to the Code sections in effect during the trial, as those are the ones referenced by the circuit court and the parties in their briefs on appeal.  However, it is important to note that the relevant language of the current definition of "slayer" in Code § 64.2-2500 is identical to the language in Code § 55-401.

§ 55-401(i) (emphasis added)), or 2) the person "is determined . . . to have committed" murder or voluntary manslaughter. Code § 55-401(ii) (emphasis added). The majority concludes that this makes the statute "internally inconsistent" because "proof of criminal 'offenses' requires an evidentiary standard of 'beyond a reasonable doubt,' " while proof in a civil proceeding is by a preponderance of the evidence. The flaw in the majority's logic, however, is the illogical premise that the difference in the burdens of proof between criminal proceedings (i.e., "convicted" of a crime) and civil proceedings (i.e., "committed" a crime) results in a change in the elements of the crime.

To the contrary, a clear reading of the statute indicates that the elements must remain the same. Indeed, in my opinion it is the majority's interpretation that results in an internal inconsistency. Notably, Code § 55-401(ii) defines a slayer as a person who "is determined . . . to have committed one of the offenses listed in subdivision (i) resulting in the death of the decedent." (Emphasis added.) The plain language of the statute establishes that the offenses under both subdivisions (i) and (ii) are identical. Under the majority's interpretation of Code § 55-401, however, the offenses listed in subdivision (i) have a mens rea element, whereas the offenses listed in subdivision (ii) have a civil intent element. In my opinion, different burdens of proof do not change the elements that must be proved.

18

Finally, I am compelled to point out the unintentional consequences of the majority's interpretation of Code § 55-401(ii).  By replacing the mens rea element with a civil intent element, I believe that the majority has unintentionally expanded the definition of "slayer" to include anyone who intentionally kills another, regardless of the circumstances.  Thus, a person who kills another in self-defense, or as a result of some other form of justifiable homicide, would be, according to the majority, a slayer.  Indeed, by arguing self-defense "a defendant implicitly admits the killing was intentional."  McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

Consider, for example, a wife who kills her abusive husband while defending herself from his attacks.  Under the majority's "civil intent" approach, the wife would be considered a slayer.  She would thus be prohibited from inheriting or receiving any property or benefits resulting from the husband's death.  See Code § 55-402 ("Neither the slayer nor any . . . person claiming through him shall in any way acquire any property or receive any benefits as the result of the death of the decedent"); see also Code § 64.2-2501.  Nor would she be entitled to any property that she would have acquired by statutory right as the surviving spouse.  See Code § 55-403; see also Code § 64.2-2502.  She would also effectively forfeit any property she owned as a

19

tenant by the entirety or with right of survivorship with the husband. See Code § 55-405 ("As to property held by the slayer and the decedent as tenants by the entirety or any other form of ownership with right of survivorship, the resulting death of the decedent caused by the slayer thereby effects a vesting of the interest of the slayer in the estate of the decedent as though the slayer had predeceased the decedent"); see also Code § 64.2-2503. I do not read Code § 55-401 et seq. to warrant such a result.

In my opinion, the proper approach is to look at the elements of murder and determine whether the evidence is sufficient to prove by a preponderance of the evidence that Osman committed murder. As the majority has stated, murder is the unlawful killing of another with malice. "Malice may be either express or implied by conduct." Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984). "Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation." Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982). As I explained above, malice cannot be transformed into civil intent or the mere intent to commit one's actions.

Turning now to Osman's argument that he could not have possessed the requisite mens rea because he was found not guilty

by reason of insanity, we have addressed this argument before.

This Court has recognized that a successful insanity defense

does not serve to negate mens rea.

> In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment. For example, an individual may kill in self-defense. The executioner may kill with the sanction of the State. A soldier may injure or kill under rules of combat. This conduct is intentional, but it is also excusable. Likewise, an individual may be excused from penalty if he is insane at the time he commits a criminal act. As here, he may do the act with every intention of consummating it, but when it is shown that he was mentally ill, he is excused from the imposition of the usual sanctions. "The absence of punishment, however, does not retrospectively expunge the original intention."

Johnson v. Insurance Co. of N. Am., 232 Va. 340, 348, 350 S.E.2d

616, 621 (1986) (emphasis added) (quoting Colonial Life &

Accident Ins. Co. v. Wagner, 380 S.W.2d 224, 226 (Ky. 1964)).

> Insanity rules like M'Naghten . . . are attempts to define, or at least to indicate, the kinds of mental differences that overcome the presumption of sanity or capacity and therefore excuse a defendant from customary criminal responsibility, even if the prosecution has otherwise overcome the presumption of innocence by convincing the factfinder of all the elements charged beyond a reasonable doubt.

Clark v. Arizona, 548 U.S. 735, 768-69 (2006) (emphasis added)

(citations omitted).[2]

---

[2] As the Supreme Court notes, an insanity defense is an affirmative defense. Clark, 548 U.S. at 778 n.45. Therefore, the Commonwealth is not required to prove the absence of insanity as an element of proving murder. Id. at 766-67 ("[The] presumption [of sanity] dispenses with a requirement on the

21

In Clark, the issue before the Supreme Court was "whether due process prohibits [a state] from . . . narrowing its insanity test or from excluding evidence of mental illness and incapacity due to mental illness to rebut evidence of the requisite criminal intent." Id. at 747 (emphasis added). The Supreme Court held that due process allows each state to choose its own standard for an insanity defense and the purpose for which such evidence may be used. Id. at 779. It recognized that, while a state may choose to allow the use of such evidence to rebut the mens rea element of a crime,[3] it is not required to. Id. at 752 ("it is clear that no particular formulation has evolved into a baseline for due process, and that the insanity

government's part to include as an element of every criminal charge an allegation that the defendant had such a capacity."); see also McGhee, 219 Va. at 562, 248 S.E.2d at 810, ("Self-defense in Virginia is an affirmative defense, the absence of which is not an element of murder.").

[3] Furthermore, the Supreme Court specifically cautioned against allowing a defendant to present evidence for such a purpose, noting that if such evidence

> is accepted as rebutting mens rea in a given case, the affirmative defense of insanity will probably not be reached or ruled upon; the defendant will simply be acquitted (or perhaps convicted of a lesser included offense). If an acquitted defendant suffers from a mental disease or defect that makes him dangerous, he will neither be confined nor treated psychiatrically unless a judge so orders after some independent commitment proceeding.

Clark, 548 U.S. at 778 n.45.

rule, like the conceptualization of criminal offenses, is substantially open to state choice") (emphasis added). Indeed, as Justice Rehnquist recognized in his concurrence in <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 705-06 (1975):

> Although . . . evidence relevant to insanity as defined by state law <u>may</u> also be relevant to whether the required <u>mens rea</u> was present, <u>the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime</u>.

(Emphasis added.) Notably, Virginia has never allowed evidence of mental illness to rebut the <u>mens rea</u> element of a crime.

The evidence demonstrates that Osman's mental illness only affected his motive for killing his mother, not his intent in doing so. Indeed, the stipulated evidence clearly demonstrated that Osman committed a purposeful, cruel act against his mother with no provocation that resulted in her death. Osman admitted that he intended his actions, and I would hold that the estate representatives have proved by a preponderance of the evidence that Osman committed murder and is therefore a slayer within the meaning of Code § 55-401.

Accordingly, I would hold that one who is shown to have executed the necessary <u>actus reus</u> while possessing the necessary <u>mens rea</u> for murder, but who is subsequently found not guilty by reason of insanity, is a slayer within the meaning of Code § 55-401.